Gene BOOKER, Petitioner,

v.

Ted ENGLE, etc., Respondents.

No. C–3–80–204.

United States District Court,
S. D. Ohio, W. D.

June 30, 1981.

Gene Booker, pro se.

Robert T. Russell, Jr., Columbus, Ohio, for respondents.

DECISION AND ENTRY DEEMING MEMORANDUM TO BE AMEND-MENT TO PETITION; DECISION AND ENTRY DISMISSING ALL CLAIMS, SAVE THAT WHICH RE-LATES TO THE TRIAL COURT'S JURY INSTRUCTIONS ON WORD "HAVE"; RESPONDENT DIRECT-ED TO SERVE AMENDED ANSWER WITHIN TWENTY DAY PERIOD

RICE, District Judge.

This is a petition for writ of habeas corpus by a state prisoner, pursuant to 28 U.S.C. § 2254. Respondent has filed an answer under 28 U.S.C. fol. § 2254, Rule 5, and the matter is now before the Court for determination of the need for an evidentiary hearing, or other "disposition of the petition as justice shall require," pursuant to 28 U.S.C. fol. § 2254, Rule 8(a).

On February 23, 1979, after a two-day jury trial, petitioner was found guilty of two counts of "having a weapon while under disability," in violation of O.R.C. § 2923.13. Petitioner was sentenced to consecutive terms of two to five years imprisonment on each count. His conviction was affirmed on intermediate appeal, and the Ohio Supreme Court subsequently declined to accept a further appeal.

In the petition now before this Court, petitioner alleges that the weapon taken from his house on May 1, 1978 (a .357 Magnum, upon which the first count under O.R.C. § 2923.13 was predicated), was seized without a warrant, in violation of petitioner's Fourth and Fourteenth Amendment rights, and that the trial court therefore erred in refusing to exclude the weapon as evidence at petitioner's trial. Further, petitioner alleges that the weapons taken from his house on May 2, 1978 (a .22 rifle and a shotgun, upon which the second count under O.R.C. § 2923.13 was predicated), were seized under a warrant obtained by an insufficient and/or perjured affidavit, in violation of petitioner's Fourth and Fourteenth Amendment rights, and that the trial court therefore erred in refusing to exclude these weapons as evidence at petitioner's trial.

In subsequent memoranda, petitioner alleges three "additional" and distinct grounds in support of the issuance of the writ. First, petitioner says that the trial court erred in instructing the jury regarding the definition of the word "have" in the statute under which petitioner was convicted. Second, petitioner says that the prosecution failed to produce evidence that any of the weapons which petitioner allegedly had were "operable," as is required by O.R.C. § 2923.11, and that the trial court

therefore erred in refusing to dismiss the charges on this ground at the close of the prosecution's case. Finally, petitioner says that the 1973 convictions (drug abuse and permitting drug abuse), upon which the petitioner's disability status in 1978 was based, were reduced to misdemeanors by the Ohio Drug Abuse Control Act of 1975 and, therefore, could not give petitioner dis-

ability status under O.R.C. § 2923.13 at the time of his arrest.

█ It is clear that petitioner may not now present the Fourth Amendment claims contained in the petition in this Court, absent some indication that petitioner was denied a full and fair opportunity to litigate the matter in state court.[1] *Stone v. Powell,*

---

1. It is unfortunate that the first of petitioner's Fourth Amendment claims—specifically, the claim of improper seizure of the .357 Magnum and failure to exclude same at trial—is foreclosed from consideration, herein. The transcript of trial court proceedings reveals the following scenario.

On May 1, 1978, a Springfield, Ohio, police officer saw an individual by the name of Massie enter petitioner's house. The officer knew that a warrant for Massie's arrest was outstanding. He radioed police headquarters for assistance and, when additional officers arrived, they entered the house. Massie was found in the third floor attic. He was arrested, patted down, and handcuffed with his hands behind his back by two officers. At about this time, petitioner followed a third officer into the attic from a lower floor.

After handcuffing Massie in the attic, one of the arresting officers noticed a woman's cosmetic or overnight case sitting approximately four to five feet from where Massie was standing. The officer unlatched the two catches on the cover, opened the case, and found the .357 Magnum inside (the basis for petitioner's first conviction for violation of O.R.C. § 2923.13). The prosecution's witnesses (the arresting officers) indicated that petitioner was repeatedly asked at the scene whom the gun belonged to, or whether it belonged to him. The officers' testimony was that petitioner first responded that the gun was his, and subsequently said that it belonged to a certain other individual. Petitioner testified that he was asked once whether the gun belonged to him, and that his response was that everything in the house belonged to him. (Petitioner testified that he was speaking figuratively, and that he meant everything in the house was his responsibility because it was his house.)

Shortly thereafter, the officers left the house taking with them Massie, the .357 Magnum, and the cosmetic case. Petitioner was arrested on a later date.

It is clear to this Court, as it should have been clear to petitioner's state trial and appellate courts, that the search of the latched cosmetic case in discovering that weapon was highly improper. The search was certainly not justified as one "incident to a lawful arrest" since it exceeded the area within the "immediate reach of the *arrestee*" (i. e., Massie, who had already been handcuffed with his hands behind his back). *See United States v. Cueto,* 611 F.2d 1056, 1062 (5th Cir. 1980). *See generally Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *Cf. United States v. Jones,* 475 F.2d 723, 727–28 (5th Cir.) *cert. denied,* 414 U.S. 841, 94 S.Ct. 96, 38 L.Ed.2d 77 (1973) (in most circumstances where arrestee's hands are cuffed behind his back, search of nearby objects would not be justified under *Chimel* exception).

Petitioner's state courts appeared to concede the failure of the "incident to arrest" justification and, instead, struck upon the "reasonableness" of the search as a "safety precaution" for alternative justification (but note the confusion of these terms in the following excerpt). *See United States v. Quigley,* 631 F.2d 415, 417–19 (5th Cir. 1980) (articulating this distinction). Petitioner's appellate court said:

... There is no dispute over the search for Massie under the warrant for his arrest. The objection relates to the opening of the latch to the case. Appellant's position is that the weapon was not in plain view and that the subject, Massie, was in custody at the time. This may be true; however, in light of all the circumstances—as we learn in subsequent assignments—with others including the appellant present in the attic, the search of objects so accessible to Massie and others in the house justified reasonable precautions for the safety of all. The case with the weapon was about two feet from Massie at the time of arrest and it was accessible to the others in the attic, other than police officers.

· · · · ·

After a hearing the court denied a motion to suppress the weapon, finding that the search of the case and discovery of the weapon (loaded) was reasonable as an incident of the lawful arrest. We agree. Here was a wanted felon, concealed and hiding in a residence with other occupants, who could only be assumed to be aiding him. Ultimately they crowded around in the attic area. A search in that immediate area was not only prudent, but as reasonable and necessary as patting down the arrested to avoid violence and serious consequences. A shoot-out was readily possible.

The first assignment is denied.

*State v. Booker,* No. 1343, slip op. at 2–3 (Clark Cty.Ct.App., October 31, 1979).

428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

▪ Moreover, it is clear that the second and third "additional" grounds for issuance of the writ, as contained in petitioner's subsequent memoranda, are without merit. First, petitioner's 1973 convictions were sufficient to give disability status in 1978, despite the reduction in the degree of offenses by virtue of the 1975 Drug Abuse Control Act. *See* O.R.C. §§ 2925.11(C)(3), 2925.-13(B)-(C). Petitioner apparently relies on *one* cause for disability, in O.R.C. § 2923.-13(A)(2), which applies only when a person has been convicted of a "felony of violence." However, under O.R.C. § 2923.13(A)(3), disability status also arises when a person has been convicted of any drug abuse offense, regardless of the degree of that offense. The causes for disability under subsections (A)(2) and (A)(3) are disjunctive. *See* O.R.C. § 2923.13(A).

▪ Second, in order for a person to violate O.R.C. § 2923.13—i. e., to have a weapon while under disability—it is necessary that the weapon which the person has be "capable of expelling . . . projectiles." O.R.C. § 2923.11(B). The prosecution in the petitioner's case did not produce "hard evidence" (test results, firing demonstration, or the like) indicating that any of the weapons at issue were inoperable. However, the prosecution was not required to produce that kind of evidence in order to obtain a conviction. The introduction into evidence of the weapons at issue, as in petitioner's case, is, in itself, probative evidence of the weapons' operability from which the jury may make its own determination regarding satisfaction of the statutory requirement. *State v. Adkins,* 40 Ohio App.2d 473, 320 N.E.2d 308, 312 (Columbiana Cty.1973). At petitioner's trial, the jury was properly instructed that, in order to convict, they had to find that petitioner did have "a firearm," and that "a firearm" means a "weapon capable of expelling . . . projectiles." (T. 187–88). The jury apparently so found upon examination of the weapons introduced into evidence.

Petitioner's remaining contention, regarding the trial court's "have" instruction, gives this Court pause. The problem here must be viewed at three levels: (1) whether "have" in O.R.C. § 2923.13 means "possession" rather than mere "access"; (2) whether the trial court's charge defined "have" in the correct terms; and (3) whether, under all the circumstances, it is reasonable to expect that the jury understood what they were required to find (either "possession" or

One might question whether the appeals court was speaking of the same incident. There was *no one* other than the petitioner, the handcuffed Massie and the police officers in the attic at the time the cosmetic case was searched. (T. 26). Although the case was "two to three feet" from where Massie *had been* when the officers entered the attic (T. 35, 39), it was "four to five feet" from Massie after he had been arrested, patted down and handcuffed—i. e., at the time the officer unlatched the catches *and searched the case.* (T. 39). The case was not "so accessible to Massie" at the time it was searched, because Massie was handcuffed behind his back, under the control of the officers, and beyond his immediate reach to the case. With specific regard to the prudence, reasonableness, and necessity of searching the case, just as one would pat down the arrestee's person—i. e., because a "shoot-out was readily possible"—the testimony of the officer who opened the case should have laid such absurd notion to rest:

Q You said that this little case was about two to three feet from where Mr. Massie had been lying. Where was he when you went into that case?
A He was standing up.
Q How far from the case was he at that time?
A Approximately four to five feet.
Q *Had he been handcuffed?*
A Yes, sir.
Q And he was under arrest?
A Yes, sir.
Q He had been patted down?
A Yes, sir.
Q Were his hands behind his back?
A Yes, sir.
Q So it's safe to say that you were not afraid for your safety at that point in time?
A No, not at that point in time.
(T. 39) *Were this Court permitted to reach the question,* it would find that the search of the cosmetic case was in violation of the Fourth Amendment, and that the failure to exclude the weapon found, therein, was improper.

562

mere "access") in order to convict petitioner for "having" weapons.

 First, the meaning of words in Ohio's statutes is not a matter for decision by this°Court. Nonetheless, it appears clear that the Ohio courts which have addressed the issue (including petitioner's state appellate court) are in agreement that "possession" is required for conviction under O.R.C. § 2923.13. *State v. Booker*, No. 1343, slip op. at 7–8 (Clark Cty.Ct.App., October 31, 1979); *see also State v. Hardy*, 60 Ohio App.2d 325, 397 N.E.2d 773, 775 n.2 (Cuyahoga Cty.1978). Second, it also appears that petitioner's state trial court instruction on "have" was mechanically sound—"possession" was required, and the charge contained that word. (T. 189).

2. The prosecutor said to the jury:

Well, I submit to you that, since the law was not put in terms of ownership but in terms of acquiring and of having, that the law simply means that and intends to preclude defendants like Gene Booker with those prior convictions *from having access to guns.*

(T. 174–75, emphasis added). Defense counsels' immediate objection was sustained, but the ensuing colloquy at the bench, as well as the "curative" instruction given to the jury (T. 175–76), both reflect that the trial court was more concerned with the fact that the prosecutor had infringed on the court's domain as "law giver," rather than with the fact that the prosecutor's argument was a clearly erroneous statement of Ohio law which, if accepted by the jury, would conveniently demand a finding of guilt on the weak "have" evidence (access rather than possession, dominion or control) which the prosecution had presented.

But this did not conclude the prosecutor's argument on that point. No sooner had the trial court sustained the objection, and given the "curative" instruction, than the prosecutor continued to address the jury as follows:

In this case, listen to the charge of the Judge as to what possession is, what acquiring or having is. I submit to you that *knowledge of the object being there, knowledge of its nature and access to it* would constitute under the facts presented to you and the law as provided to you by the Court acquiring or having that firearm.

(T. 176, emphasis added). Apparently satisfied with the continuing effect of the instruction to disregard counsels' comments on the meaning of the law, the trial court overruled the immediate defense objection to this second (i. e., repeated) misstatement of Ohio law.

Argument before a jury regarding the application of the law to the evidence in a case is one thing. There is nothing wrong with such

But the third inquiry is not so easily answered. In reviewing the entire transcript of the state proceedings, submitted by respondent, the Court notes the following matters:

(1) the prosecutor repeatedly and erroneously (i. e., in contradiction with the trial court's instruction and appellate court's decision) argued *before the jury* that mere "access" to the weapons was sufficient for conviction under Ohio law [2]

(2) although sufficient for conviction, the prosecutor's evidence was entirely circumstantial and very thin (i. e., there was no direct evidence of the petitioner's ownership or possession of the weapons, and the inferences supporting same which the

course *provided* that counsel is certain that his statement of the law's requirements will coincide with the court's instructions. *United States v. Sawyer*, 443 F.2d 712, 714 n.11 (D.C. Cir.1971). But arguing about what the law "intends," or what counsel "submits" the law does or does not require, is a wholly different matter. It is, at best, a risky enterprise. Although, not all misstatements of law in a prosecutor's presentation to the jury will necessarily lead to the conclusion that the accused has been deprived of a fair trial, *see e. g., United States v. Berry*, 627 F.2d 193, 200 (9th Cir. 1980); *Vuckson v. United States*, 354 U.S. 918, 922 (9th Cir.), *cert. denied*, 384 U.S. 991, 86 S.Ct. 1896, 16 L.Ed.2d 1007 (1966); *United States v. Hayes*, 479 F.Supp. 901, 918–19 (D.P. R.1979), where the argument does have that effect, there is error and the resulting conviction should not stand. *Graham v. United States*, 257 F.2d 724 (6th Cir. 1958). *See also United States v. Artus*, 591 F.2d 526 (9th Cir. 1979); *United States v. Vargas*, 583 F.2d 380 (7th Cir. 1978); *United States v. Segna*, 555 F.2d 226 (9th Cir. 1977); *United States v. Phillips*, 527 F.2d 1021 (7th Cir. 1975); *United States v. Taylor*, 510 F.2d 1283 (D.C.Cir.1975); *United States v. Cummings*, 468 F.2d 274 (9th Cir. 1972); *United States v. Bohle*, 445 F.2d 54 (7th Cir. 1971).

Each of the immediately preceding cases involved a direct appeal from a federal conviction. Of course, error which is grounds for reversal on direct appeal might not constitute a constitutional deprivation sufficient for federal habeas relief from a state conviction. *See* note 5, *infra*. On the other hand, in some circumstances, such an error can be adequate to support the issuance of the writ. *See* notes 5 and 6, *infra*.

jury might have found from the evidence on the record were tenuous);[3] and

(3) the trial court's "have" instruction, which was so crucial under that state of the evidence, was neither a model of clarity nor clearly effective in disarming the prosecutor's repeated improper and erroneous argument (i. e., even though the charge contained the word "possession"—which is a legal term of art—it is unlikely that a lay jury, not versed in legal terminology, would have understood upon the charge *and the prosecutor's argument* that a finding of mere "access," as opposed to "dominion and control," was insufficient for conviction).[4]

Under the circumstances reflected by the record, there appears a substantial likelihood that petitioner may have been convicted, not for "having" (i. e., "possessing") weapons in violation of O.R.C. § 2923.13, but for having "access" to weapons. This is not the crime upon which petitioner was tried, *see Booker, supra,* and would not appear to constitute criminal conduct in Ohio, *see Hardy, supra.*

This Court can not *directly* police the conduct of Ohio's prosecutors—that is a matter for the state's courts. *Cook v. Bordenkircher,* 602 F.2d 117, 119 n.5 (6th Cir.) *cert. denied,* 444 U.S. 936, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979). Nor is this Court directly concerned with the paucity of the

---

**3.** The apparent sufficiency of the evidence for conviction is not an insuperable obstacle to petitioner's relief, herein. *Cf. Cook v. Bordenkircher,* 602 F.2d 117, 121 (6th Cir.), *cert. denied,* 444 U.S. 936, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979), where the writ was denied, but where it was thought "crucial" that proof of guilt was "compelling" and "overwhelming," and where the Court said: "Were proof of guilt less strong, we would not hesitate to issue the writ."

**4.** O.R.C. 2923.13(A), the statute under which petitioner was convicted, makes it unlawful for a person under a disability (such as petitioner) to "acquire, have, carry, or use any firearm . . . ." Under the circumstances, the trial court's instruction to the jury on the definition of the word "have," in the statute, was extremely critical (i. e., because there was no evidence that petitioner had acquired, or had carried or used the weapons at the time in question). The trial court instructed:

> The word "have" as used there means possessed [sic]. A person has possession when he has the object on or about his person, property or places where it is accessible to his use or direction and he has the ability to direct or control its use. Ownership is not necessary. A person may possess or control property belonging to another. Two or more persons may have possession if together they have the ability to control it exclusive of others.

(T. 189). Petitioner's counsel objected to this instruction in the following manner:

> We'd like to make note of our objection specifically to the Court's instruction as to the element of having a firearm while under disability. We object specifically to the Court's instruction as to having, confining that to the Defendant simply having access. We think that the statute is broader than the Court defined it and that specifically the Court's

instruction with reference to the word "have" is improper and incorrect. (T. 196). The objection was overruled. (T. 197).

The State appellate court's denial of error assigned on this matter is, at best, quite curious. After pointing out that petitioner failed to request a specific instruction on "have" at the close of the evidence, the appeals court said that the objection to the instruction as given was "vague" and "possibly inconsistent":

> If the statute be "broader" than defined, as claimed in the objection, we see no point to be made in this case because a narrow instruction would be favorable to applicant. R.C. 2923.13 is a very broad statute. "Acquire, have, carry or use" is comprehensive and includes the ownership, possession or control of such a weapon, regardless of where it may be. In itself, the word "have" is a common generic word that has so many applications that it defies a narrow definition. It includes ownership or possession of any character.
>
> We find no merit to this assignment.

*State v. Booker,* No. 1343, slip op. at 7–8 (Clark Cty.Ct.App., October 31, 1979).

With all deference to the state appellate court, it simply missed the point. Although the petitioner's objection to the instructions could have been more artfully phrased, the substance of the objection is very clear. Petitioner felt that the instruction "confined" the jury to determining only whether petitioner had "access" to the weapons, *but that the statute requires* more than mere access—i. e., "possession," which imports the legal right to dominion and control. In this sense, the statute is, indeed, "broader," and a "narrow" instruction (one which *confines* the jury simply to the question of "access") is clearly *unfavorable* to the petitioner.

"possession" evidence upon which petitioner was convicted. *Cf.* 28 U.S.C. § 2254(d)–(e). The evidence of "possession" appears sufficient, although just barely so.

However, this Court is quite properly concerned with the possibility that petitioner's state trial was not "fundamentally fair"[5] i. e., that the state proceedings might not have been *ultimately directed* to a jury determination of petitioner's guilt or innocence on the crime with which he was charged and, at least nominally, upon which he was tried (i. e., "possession" of weapons, rather than mere "access" thereto). It is in addressing this concern that the prosecutor's improper argument and the weakness of his case,[6] as well as the character and content of the trial court's charge, are considered significant.

■ All of these matters flow from petitioner's contention regarding the trial court's "have" instruction. However, that contention was raised for the first time (in this Court) in a memorandum submitted by petitioner *after* respondent had been ordered to answer only the claims in the original petition (i. e., the Fourth Amendment claims). Respondent has not yet specifically addressed the petitioner's claim regarding the trial court's instruction, nor the associated matters identified above.

Therefore, the Court orders as follows: (1) Petitioner's memorandum of July 2, 1980, shall henceforth be deemed an amendment to the petition, to the extent it raises matters not raised in the petition as originally filed; (2) Pursuant to 28 U.S.C. fol. § 2254, Rules 4, 8(a), all claims in the amended petition are dismissed, with the exception of the claim regarding the trial court's "have" instruction (which includes the associated matters identified above); (3) Within twenty (20) days from the date of this decision, respondent shall answer the remaining claim in the amended petition (including the associated matters identified above) in the form required by 28 U.S.C. fol. § 2254, Rule 5. Respondent need not include matters addressed in, or supplied with the prior answer.

At the present time, it appears to the Court that the remaining matter in the amended petition may be resolved, after respondent's answer, without need of an evidentiary hearing. *See* 28 U.S.C. fol. § 2254, Rule 8(a). However, a formal decision on the need for an evidentiary hearing (or a response by petitioner to respondent's forthcoming answer) will be held in abeyance pending respondent's answer.

---

5. *Bruce v. Estelle*, 483 F.2d 1031 (5th Cir. 1973), *after remand*, 536 F.2d 1051 (5th Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977):

We are mindful of the fact that federal courts do not sit as courts of errors and appeals when a state prisoner seeks federal habeas corpus. At the same time, we cannot ignore our responsibility to insure that an accused obtains a fair trial ....

483 F.2d at 1040 (footnote omitted).

6. In determining whether petitioner was denied a fundamentally fair trial, these matters are inseparable:

In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused.

*United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976); *see also, Cook, supra,* at 120.