**Gene BOOKER, Petitioner,**

v.

**Ted ENGLE, Supt., et al., Respondents.**

**No. C-3-80-204.**

United States District Court,
S. D. Ohio, W. D.

Dec. 24, 1981.

Gene Booker, pro se.

Robert T. Russell, Jr., Asst. Atty. Gen., Columbus, Ohio, for respondents.

## DECISION AND ENTRY DISMISSING PETITION FOR WRIT OF HABEAS CORPUS; JUDGMENT TO RESPONDENTS AND AGAINST PETITIONER; ENTRY OF JUDGMENT; TERMINATION ENTRY

RICE, District Judge.

This is a petition for writ of habeas corpus by a state prisoner, pursuant to 28 U.S.C. § 2254. In a decision and entry, dated June 30, 1981, the Court dismissed all of petitioner's claims, except one relating to the state trial court's jury instruction on the meaning of the word, "have," and matters associated therewith, *i.e.*, certain remarks made by the prosecutor during closing argument. (doc. # 14.) 517 F.Supp. 558. The matter is now before the Court for determination of the need for an evidentiary hearing or other disposition of said claim, "as justice shall require," pursuant to 28 U.S.C. fol. § 2254, Rule 8(a). Having considered the remaining claim in light of respondents' answer thereto and their amended return of writ, together with the transcript and records of the state court proceedings and applicable authority, and for the reasons set forth below, the Court concludes that an evidentiary hearing is not required, and that the petition should be and is, hereby, dismissed.

### A. BACKGROUND

In February, 1979, after a two-day jury trial in the Clark County Court of Common Pleas, petitioner was found guilty of two counts of "having a weapon while under a disability," in violation of Ohio Rev.Code § 2923.13.[1] Petitioner was sentenced to consecutive terms of two to five years imprisonment on each count. His conviction was affirmed on intermediate appeal, and the Ohio Supreme Court declined further review. Petitioner is currently incarcerated in the Chillicothe Correctional Institute.

In his original petition, petitioner asserted a violation of his rights under the fourth and fourteenth amendments, arising from a warrantless search of his residence, and from a subsequent search which, he alleged, had been conducted pursuant to a warrant obtained on the basis of an insufficient and/or perjured affidavit. The fruits of these searches, a .357 Magnum, a .22 rifle and a shotgun, provided the predicate for the counts for which petitioner was convicted, and were admitted, over objection, at petitioner's trial.

Subsequent to the filing of the original petition and to the respondent's answer, petitioner raised, by way of memorandum, three "additional" and distinct grounds in support of relief, to wit: (1) that the trial court erred in instructing the jury regarding the word, "have," in the statute under which petitioner was convicted; (2) that the prosecutor failed to produce evidence that any of the weapons which petitioner allegedly had were "operable," as required under the statute; and (3) that the 1973 convictions (drug abuse and permitting drug abuse), had been reduced to misdemeanors under a 1975 change in the law, and, therefore, could not be the basis for

---

1. Ohio Rev.Code § 2923.13 provides in pertinent part:

(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

(3) Such person ... has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse, or has been adjudged a juvenile delinquent for commission of any such offense;

. . . . .

(B) Whoever violates this section is guilty of having weapons while under disability, a felony of the fourth degree.

relief from the disability referred to in the statute at the time of petitioner's arrest.

In its decision and entry of June 30, 1981, this Court deemed petitioner's memorandum an amendment to the original petition. For the reasons set forth in said entry and decision, which need not be reiterated herein, the Court dismissed the claim asserted by petitioner in his original petition, regarding violations of the fourth and fourteenth amendments, and also dismissed two of the three claims raised in the subsequent memorandum, regarding the state's failure to produce evidence as to the operability of the weapons, and the petitioner's disability status, arising from his 1973 drug-related convictions. *See*, doc. # 14.

The Court, however, deferred a ruling on petitioner's remaining claim, regarding the trial court's "have" instruction. In the June 30, 1981 decision and entry, the Court noted that the Ohio courts which had considered section 2923.13, Ohio Rev.Code, are in agreement that "possession," as opposed to mere "access," is required to sustain a conviction. *See, id.* at 4. The Court further acknowledged that the state court's "have" instruction at petitioner's trial was mechanically sound or technically correct, since it contained the word, "possession." *Id.* Additionally, the Court recognized that the state appellate court had rejected this claim as a basis for reversing petitioner's conviction. *See, id.* n.4.

However, the Court then addressed the possibility that, when considered in conjunction with certain other aspects of the state proceeding, this instruction might have resulted in petitioner's convictions, not for "having," *i.e.*, "possessing," weapons, but rather, for having mere "access" to them, which does not constitute criminal conduct under section 2923.13, Ohio Rev.Code. The Court identified certain matters as potentially bearing on the question whether petitioner's state trial had been "fundamentally fair," including: (1) the prosecutor's improper remarks during closing argument to the effect that mere "access" to weapons was sufficient for conviction; (2) the tenuousness of the state's evidence against petitioner, which was entirely circumstantial in nature; and (3) the lack of clarity in the trial court's "have" instruction, which may not have effectively neutralized the prosecutor's improper remarks. *See, id.*

Having expressed concern that, when taken together, the trial court's "have" instruction and the prosecutor's remarks, may have led the jury to understand that a finding of mere "access," as opposed to dominion and control ("possession"), was sufficient to convict petitioner on the offenses charged, the Court held a final determination on the matter in abeyance until after respondent had been afforded an opportunity to answer this claim and the matters associated therewith.

Respondent has submitted an amended return of writ (doc. # 19), which addresses petitioner's remaining claim and the matters flowing therefrom. The reasoning and authority contained therein have dispelled the concerns expressed by the Court in its June 30, 1981 decision and entry, and have led the Court to conclude that none of the matters enumerated therein, *e.g.*, regarding the trial court's "have" instruction, itself, the prosecutor's remarks during closing argument, or a combination thereof, rendered petitioner's state trial "fundamentally unfair," or denied him any other right for which relief can be granted under 28 U.S.C. § 2254.

## B. DISCUSSION

The petitioner's remaining claim is predicated on the following portion of the trial court's instruction to the jury:

As you will recall, in the first count that I read to you and the third count that I read to you, the first element is that Gene Booker did knowingly have a firearm. In one it was a .357 Magnum revolver, and the other a rifle or shotgun.

The word "have" as used there means *possessed*. A person has *possession* when he has the object on or about his person, property or places where it is accessible to his use or direction and he has the ability to control its use. Ownership is not necessary. A person may *possess* or

control property belonging to another. Two or more persons may have *possession* if together they have the ability to control it exclusive of others.

Trial Transcript, at 188–89 (emphasis added).

Petitioner claims that this instruction erroneously equated "access" with "having" a weapon, and that the trial court, therefore, permitted the jury to convict petitioner for two counts of violating section 2923.13, Ohio Rev.Code, on the basis of having mere "access" to, as opposed to "possession" of the weapons. Respondent raises essentially two contentions in opposition. Initially, respondent contends that petitioner is barred from raising this argument for failure to comply with Rule 30, Ohio R.Crim.P.[2] Alternatively, respondent counters petitioner's claim by reliance on the language of the instruction, itself, which, according to respondent, did not equate mere "access" with "having" (i.e., "possession"), but rather instructed the jury that knowledge and the ability to direct or control were also required, in addition to "access."

In its June 30, 1981 decision and entry, this Court expressed the opinion that the challenged instruction was less than "a model of clarity." However, upon a careful re-reading of same, in light of the element of perspective provided by respondent's amended return of writ, it now appears to the Court that the instruction is both mechanically sound and relatively free from ambiguity as to the requirements for a conviction under section 2923.13, Ohio Rev. Code.

Initially, the trial court instructed the jury that knowledge is an essential element of the offense, that is, that petitioner "knowingly" had the firearms described in the first and third counts. Thereafter, consistent with *State v. Hardy*, 60 Ohio App.2d 325, 397 N.E.2d 773, 775 (1978), the trial court, in a simple declarative sentence, instructed the jury that "have," as used in section 2923.13, "means possessed." The word, possession or a derivation thereof, is then repeated in three of the four succeeding sentences of the instruction.

In contrast, a derivation of the word, "access," is used only once in the challenged instruction; specifically in the sentence: "A person has possession when he has the object on or about his person, property or places where it is accessible to his use or direct control *and* he has the ability to control its use" (emphasis added). This Court agrees with respondent that, when this sentence is considered in its entirety, as opposed to isolating its component clauses, it cannot fairly be read to mean that "access," alone is sufficient to constitute possession. Such an interpretation ignores the trial court's use of the conjunctive, "and."[3]

2. Because the Court finds merit in respondent's alternative contention, based on the wording of the instruction, it need not consider the argument that petitioner is barred from raising any challenge to the instruction because he did not submit a written request for an instruction under Rule 30, Ohio R.Crim.P. The Court does, however, wish to note that it finds this argument both curious and unpersuasive.

While it is quite true that Rule 30 sets forth a procedure whereby a party *may* submit a proposed instruction, the Court finds nothing in the rule or in Ohio decisional law to support the position adopted by the respondent or the state appellate court to the effect that a party *must* file a written request in order to preserve his right to pursue, on appeal, a timely, specific objection made to an instruction prepared and given by the trial court.

Rule 30 provided in part:

No party may assign as error any portion of the charge or omission therefrom *unless he*

objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection (emphasis added).

This Court does not read this provision to mean that a party waives his right to assign error to a portion of an instruction only if he has previously submitted a written request on the matter. Rather, the plain meaning of this provision seems to be that as long as a party makes the appropriate, specific objection to an instruction, before the case is submitted to the jury for deliberation, the party has reserved his right to assign error, regardless of whether he filed a written request.

3. The first three, and, thus, preferred definitions of the word, and, in Webster's Third New International Dictionary 80 (1979) are: "along with or together with . . . ," "added to or linked to . . . ," and "as well as . . . ."

By using the word, "and," rather than the disjunctive word, "or,"[4] the trial court, in reality, instructed the jury that, in order to possess and thus "have" a firearm, within the meaning of section 2923.13, there are two requirements, neither of which, by itself, is sufficient to support a conviction: first, that the object (firearm) is accessible[5] to the party; *and* second, that the party to whom the object is accessible also has the ability to control its use.

In *State v. Hardy, supra,* 397 N.E.2d at 775, one of the definitions set forth for "actual possession," was "physical control." Upon reflection, this Court can perceive no legally significant differences between this definition and the one given to the jury at petitioner's trial, that is, accessibility plus the ability to control. Moreover, even if this one sentence of the instruction, wrenched out of context, could be said to have created some confusion because the word, "accessibility," is used therein, that confusion is, in this Court's opinion, effectively eliminated when the sentence is read in context with the last two sentences of this portion of the instruction. Both of these sentences equate possession, not with mere "access," but with "control" or "the ability to control." Thus, when the trial court's "have" instruction, as previously quoted, is considered in its entirety, (see Trial Court's Instruction of pg. 4, *supra*), it clearly embodies a correct statement of the meaning of "have," as used in section 2923.13, Ohio Rev.Code. Therefore, the Court concludes that petitioner's claim, that the trial court erroneously instructed the jury that a finding of mere "access," alone, was sufficient to support conviction for "having" the firearms, is without merit.

It should be obvious that this Court's previously expressed misgivings, to the effect that the trial court's "have" instruction, together with certain of the prosecutor's remarks during his closing argument, may have rendered it unreasonable to expect the jury to understand what it was required to find in order to convict petitioner for "having" weapons, have been substantially, if not completely, alleviated. Those misgivings were, in large part, predicated upon the Court's initial impression that the "have" charge did not clearly instruct the jury that a finding of "possession," as opposed to mere "access," was required for conviction under section 2923.-13. Having concluded, upon re-reading, that the "have" instruction was, itself, free from error, and clear as to the finding necessary to support a conviction for "having," *i.e.,* possessing, a weapon, the Court's previously expressed concerns are now largely unfounded. *See,* doc. # 14, at 3–4.

■ Moreover, in retrospect, it appears that this Court's broadening of petitioner's remaining claim, which dealt solely with the "have" instruction itself, to include the question whether said instruction, in conjunction with the prosecutor's improper remarks on rebuttal, rendered petitioner's state trial "fundamentally unfair" is in conflict with the rule that "the substance of a federal habeas corpus claim must first be presented to the state courts." *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971). In *Picard,* the Court of Appeals had reversed the District Court's denial of relief on the ground that petitioner, who had not raised an equal protection claim in either the state courts or in his federal habeas petition, had, nonetheless, exhausted his state remedies by presenting "the [state] court with 'an opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim.'" *Id.* at 272, 92 S.Ct. at 510 (citations omitted) (brackets in the original). The Supreme Court reversed because it

---

4. The word, or, is "used as a function word to indicate [, *inter alia*]: (1) *an alternative* between different or unlike things, states or actions ...; (2) *choice between alternative things, states or courses ....*" Webster's Third New International Dictionary 1585 (1979) (emphasis added).

5. The second and fourth definitions of "accessible," appearing in Webster's Third New International Dictionary 11 (1979) are: "capable of being reached or easily approached;" and "capable of being used, seen, known or experienced: AVAILABLE."

found that petitioner's equal protection claim had not been "fairly presented to the state court." *Id.* at 275, 92 S.Ct. at 512.

In the case at bar, there is no indication from the records of the state court proceedings that petitioner ever presented to the state courts a claim based on the combined effect of the prosecutor's remarks and the trial court's "have" instruction. On the contrary, the trial transcript indicates that, during trial, petitioner raised separate objections to certain of the prosecutor's remarks, and to the "have" instruction, but at no time did he raise a claim or objection regarding their collective impact upon the jury. *See,* Trial Transcript, at 175–76, 196–97. Additionally, it appears that petitioner did not press his objections, regarding the prosecutor's improper remarks, to the state appellate court, which, in affirming the convictions, overruled his claim based on the trial court's "have" instruction. Moreover, petitioner did not, himself, present a claim, encompassing the prosecutor's improper remarks, in either his original or amended petitions to this Court.

Thus, under *Picard*, it appears that the broad question framed by this Court in its June 30, 1981 decision and entry is one that has not been "fairly presented to the state courts." Consequently, it is an issue for which petitioner had failed to exhaust his state remedies, thereby rendering it an inappropriate matter for resolution by this Court. However, because the broader question, regarding both the "have" instruction and the prosecutor's remarks, has been raised, and because petitioner has, with reason, been under the impression that disposition of his petition would turn on the resolution thereof, the Court will briefly set forth its reasons for concluding that the prosecutor's remarks did not operate to deprive petitioner his right to a fair trial.

Respondent contends that petitioner's current objection to the prosecutor's remarks during rebuttal argument, in which he expressed the opinion that the intent of section 2923.13 was to prevent persons, like petitioner, from having access to weapons, is unwarranted on the ground that these remarks, and any potential confusion flowing therefrom, were invited by petitioner's counsel in his closing argument. In support, respondent relies upon several authorities which have recognized a prosecutor's "right to reply when defense counsel opens the door . . . ." *United States v. Bess,* 593 F.2d 749, 757 n.11 (& citations therein) (6th Cir. 1979); *See also, United States v. Mouton,* 617 F.2d 1379 (9th Cir. 1980); *United States v. Daniels,* 617 F.2d 146 (5th Cir. 1980); and *United States v. Smith,* 561 F.2d 8 (6th Cir. 1977).

Having reread the pertinent portions of the trial transcript, this Court finds itself in agreement with respondent's contention. In his closing argument, petitioner's counsel does, indeed, raise a question, albeit rhetorical in nature, about the intent of section 2923.13. He argued as follows:

I suppose, once again, the State would have you believe that Gene Booker had this—had possession of these particular firearms and that it was knowingly. Of course he knew they were hanging on the wall, but did he ever have them? Did he use them? Did he exert any control over them at all?

The answer is there is no testimony at all that he did. As a matter of fact, the testimony is quite to the contrary. Kathleen says that she picked these out from her father's gun collection for her son and that she had them in a blanket, wrapped up, on Grand Avenue and when they moved they went with her and they hung them on the wall so that the kids wouldn't get them. *Now is that really what the statute is trying to stop?* Are these Gene Booker's? The answer is no. The answer is clearly no; and the State, once again, would ask you to grasp at straws to say that these weapons are Mr. Booker's.

Trial Transcript, at 166 (emphasis added).

After hearing petitioner's counsel's closing argument, favorably summarizing the testimony adduced about the weapons described in the third count (the shotgun and rifle) and positing a question about the intent of section 2923.13, the prosecutor made the following comments on rebuttal:

Well, let's start with the third charge of a shotgun and rifle. The evidence in the entire trial has shown that the Defendant had those on a wall in a house he rented, a room he had access to, that he's the one that placed them on the wall, and that he knew they were there. Based on those facts, I submit to you, ask yourself the question: Was the Defendant aware that the circumstances of those guns hanging on the wall probably existed? The answer, of course, is yes. He put them there.

*In talking about that area, Mr. Hoffman* [petitioner's counsel] *asked is that what the law intends to stop.* Well, I submit to you that, since the law has not put in terms of ownership but in terms of acquiring and of having, that the law simply means that and intends to preclude defendants like Gene Booker with those prior convictions from having access to guns.

Trial Transcript, at 174–75 (emphasis added).

In its June 30, 1981 decision and entry (doc. # 14 n.2), this Court considered only the last sentence of the above excerpt from the prosecutor's rebuttal, and did *not* consider it in context with the first sentence, referring back to petitioner's counsel's remark, to the paragraph preceding it, or in juxtaposition to the comments made by petitioner's counsel. When viewed from this broader perspective, rather than in isolation, it plainly appears that the prosecutor's remarks closely paralleled the order and subject matter of petitioner's comments, as previously quoted. Like petitioner's counsel, the prosecutor summarized the testimony adduced at trial on the third count, in a light most favorable to the state. After so doing, he recalled the question raised by Mr. Hoffman, about "what the law intends to stop," and then proceeded to express his opinion about how that question should be answered.

Additionally, the exchange between the trial court and counsel, after petitioner objected to this remark, reveals that petitioner's counsel was cognizant of the impropriety of referring to the intent of the statute. The pertinent portion of the bench conference is as follows:

Mr. Baader [prosecutor]: The State is not precluded talking about the law. *In this case Defense Counsel has opened the area of the intention of the law.* The State is presently not arguing what the law is but simply saying that the words, "knowingly," "acquire," or "have" go to access not ownership.

The Court: Did you say what the intent of the law is, also? If said that, then I find it difficult for you to object to this.

Mr. Hoffman [petitioner's counsel]: *Why not? He didn't object to mine. He had a right to object if I did.*

Trial Transcript, at 174–75 (emphasis added).

Moreover, it must also be recalled that, upon hearing the above arguments of counsel on the objection, the trial court sustained same, and thereafter, gave the following curative instruction:

Ladies and gentlemen, as I've told you before, the Judge is the sole authority as to the law. *What the attorneys might say or have said concerning their impression of the intent of the law or what it means cannot be considered by you.* They're only supposed to be pointing out to you the testimony from the witness stand and so I shall tell you about the law. *You must accept what I say and not what the attorneys say.*

Trial Transcript, at 176 (emphasis added).

This Court recognizes that a prosecutor's references to the intent of a statutory provision during closing argument are improper and may, in some situations, be so prejudicial as to warrant federal habeas corpus relief. *See, United States v. Leon,* 534 F.2d 667 (6th Cir. 1976) (reversal of federal criminal conviction based on prosecutor's extensive references to Congressional intent). However, the Court concludes that no relief is warranted under the circumstances of this case, where the improper reference was made by the prosecutor in rebuttal *after* defense counsel opened the door to the sub-

ject of the intent of the statute in his closing argument; where defense counsel was aware that broaching this subject was objectionable; and where the trial court immediately sustained the objection made by defense (Petitioner's) counsel and instructed the jury that only the court's instruction on the law was to be considered, not the statements or impression of counsel.

Finally, a few brief comments must be addressed to the Prosecutor's remark immediately following the trial court's curative instruction, wherein he argued:

In this case, listen to the charge of the Judge as to what possession is, what acquiring or having is. I submit to you that knowledge of the object being there, knowledge of its nature and access to it would constitute under the facts and the law as provided you by the Court acquiring or having that firearm.

Trial Transcript, at 176. The trial court overruled petitioner's objection to this remark.

Coming as it did, after the trial court had sustained petitioner's objection to a similar remark, this comment by the prosecutor is flagrantly improper. However, the context of the remark again leads the Court to conclude that no prejudice, warranting relief, resulted therefrom. First, the comment immediately followed the trial court's curative instruction that the attorneys' opinions about what the law means must not be considered, and that it was to accept only what the court said about the law. Second, this remark cannot be considered in isolation, but must be viewed in the context of the closing arguments as a whole, wherein both counsel urged the jury that possession was necessary for conviction under the statute. *See, e.g.,* Trial Transcript, at 166, 167, 169, 171, 173, 174. Third, the comment, which urges the jury to "listen to the charge of the Judge," must be considered in light of that charge in which the trial court clearly instructed the jury that "have" for purposes of the statute, "means possessed," and that possession required "control" or "the ability to control," in addition to access. All things considered,

the Court concludes that this second remark, while unquestionably improper, did not create substantial likelihood that petitioner may have been convicted under section 2923.13, Ohio Rev.Code, for having mere "access," to weapons, rather than for "possessing" them.

CONCLUSION

Based on all of the foregoing, the Court concludes that petitioner's remaining claim is without merit, with respect to the challenge to the trial court's "have" instruction, as specifically raised in the amended petition, and with respect to the broader challenge framed by this Court, encompassing both the "have" instruction and the prosecutor's improper remarks during closing argument. The petition for writ of habeas corpus is, therefore, dismissed.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Counsel should take note that this Decision is also in the form of a judgment entry. Therefore, the time for prosecuting an appeal to the Sixth Circuit Court of Appeals must be computed from the date upon which this Decision and Entry is filed.