Hubert MOSTADE, Petitioner,

v.

Ted ENGLE, Superintendent, Chillicothe Correctional Institute, Respondent.

Civ. A. No. C80–874A.

United States District Court,
N. D. Ohio, E. D.

Dec. 24, 1980.

Gerald A. Messerman, Cleveland, Ohio, for petitioner.

Richard David Drake, Columbus, Ohio, for respondent.

## ORDER

CONTIE, District Judge.

This matter is before the Court upon a petition for habeas corpus relief, pursuant to 28 U.S.C. § 2254, from petitioner's state conviction on two counts of rape. The within action was referred to the United States Magistrate for a report and recommendation. Said report was filed and therein the Magistrate recommended that the petition be denied. Petitioner has filed objections to the Report and Recommended Decision of the Magistrate.

### I.

### THE STATE CRIMINAL PROCEEDINGS

Petitioner was indicted on two counts of rape and two counts of kidnapping, arising out of two separate incidents allegedly occurring on July 22, 1975, and September 2, 1978. The indictment was amended to add four additional counts of rape and one count of attempted rape, for events allegedly occurring on three prior dates: May 30, 1969; September 12, 1970; and October 17, 1970. The criminal charges were brought as the result of a series of sexual assaults perpetrated against young women over a nine year period. These assaults were committed within the boundaries of Sand Run Metropolitan Park located in Akron, Ohio. Although petitioner was implicated early during the spree of sexual assaults at Sand Run Park, the initial investigation did not result in an indictment.

The case was tried to a jury. Eight victim-witnesses appeared at trial and gave testimony inculpating petitioner in five separate incidents; three of the young women were involved in a single encounter and another was allowed to testify to an attack solely for purposes of identification and intent. There were numerous similarities in the testimony adduced relative to the description of the attacker and his modus operandi. Each of the victims who testified had selected petitioner out of photo arrays prior to trial, and also had identified petitioner during trial. There was no physical evidence conclusively linking petitioner to the crimes charged. Petitioner's case rested primarily upon evidence in support of a combination of alibi and misidentification defenses to the crimes charged.

The jury deliberated for two days and returned a verdict of guilty on the two counts of rape and two counts of kidnapping charged in the original indictment for the 1975 and 1978 assaults. The trial judge denied a motion for a new trial. Petitioner was sentenced to consecutive terms of imprisonment. An appeal was taken to the State Court of Appeals, which affirmed the convictions for rape but vacated the convictions for kidnapping.[1] The Court of Appeals also held that the trial court's sentencing procedure was defective and remanded the case for resentencing. The Ohio Supreme Court overruled a motion for leave to appeal from the Court of Appeals. Petitioner has thus exhausted all available and effective state remedies. *See Keener v. Ridenour*, 594 F.2d 581 (6th Cir. 1979).

---

1. The reversal was based on *State v. Donald*, 57 Ohio St.2d 73, 386 N.E.2d 1341 (1979), interpreting Ohio Revised Code § 2941.25(A) and holding that a person cannot be convicted of both rape and kidnapping for the same act.

## II

### PETITIONER'S CLAIMS FOR FEDERAL HABEAS CORPUS RELIEF

Seven claims are presented in support of the within petition for federal habeas corpus relief. The Magistrate determined that each claim was without merit. Upon consideration of the report of the Magistrate, the entire record below, and the substance of petitioner's sixth claim, the Court rejects the Magistrate's recommendation to deny the within petition.

Petitioner has attempted to incorporate by reference all the arguments in the memorandum in support of the petition for habeas corpus relief into his objections to the Report and Recommended Decision of the Magistrate. Rule 8(b)(4), 28 U.S.C. § 2254, provides in relevant part that "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Petitioner's incorporation by reference is insufficient to satisfy the objection requirement. Reliance upon a standardized phrase such as "incorporate by reference" serves only to circumvent the intent of Rule 8(b)(4).

Petitioner has, however, objected in detail to two portion's of the Magistrate's report. Specifically, petitioner contests the Magistrate's finding that petitioner's first and sixth claims for relief are without merit. A de novo determination of the merits of the sixth claim is dispositive of the within petition for habeas corpus relief.

## III.

### PROSECUTORIAL MISCONDUCT

Petitioner's sixth claim for relief is predicated upon an allegation of prosecutorial misconduct: "By engaging in a pattern of conduct intended to inflame the passions of the jury, by suggesting that petitioner was part of a corrupt police coverup designed to insulate petitioner from prosecution for heinous offenses, and by arguing that petitioner should be denied the presumption of innocence, the prosecutor acted in a fashion which denied petitioner a fair trial." For the reasons set forth below, the Court cannot accept that portion of the Report and Recommendation of the Magistrate rejecting petitioner's sixth claim for relief.

There are two prongs to petitioner's claim of prosecutorial misconduct. First, petitioner complains of the prosecutor's inquiry during trial into both his and his wife's personal sexual habits and a police coverup that allegedly stalled the criminal proceedings that were eventually conducted. Second, petitioner argues that the prosecutor's closing argument denied him the presumption of innocence. Also, petitioner apparently challenges references in the prosecutor's closing argument to the alleged police cover-up.

### A.

■ When petitioner raised this claim on direct appeal, the Ohio Court of Appeals noted that not all the challenged prosecutorial conduct was objected to at trial. There is no indication in the record before this Court that objection was made to any of the prosecutor's closing remarks. "Ordinarily, errors which arise during the course of a trial, which are not brought to the attention of the court by objection or otherwise, are waived and may not be raised on appeal." *Stores Realty Co. v. Cleveland Bd. of Building Standards and Building Appeals,* 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975). *See* 4 Ohio Jur.3d *Appellate Review* § 137 (1978). Nonetheless, the Ohio Court of Appeals considered the merits of petitioner's claim in its entirety and found no prejudicial error arising out of the prosecutor's conduct. Petitioner's motion for leave to appeal to the Ohio Supreme Court was denied.

■ As a threshold matter the Court is confronted with the issue whether petitioner's procedural default relative to portions of the challenged prosecutorial conduct forecloses federal habeas corpus review. *See Wainwright v. Sykes,* 433 U.S. 77, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). That the state appellate court considered the claim of prosecutorial misconduct in its entirety is

dispositive. "[T]he failure to comply with a state's contemporaneous objection requirement cannot be deferred to as a separate and independent procedural ground precluding federal review if the state itself did not preclude review on the basis of that requirement." *Hockenbury v. Sowders*, 620 F.2d 111, 115 (6th Cir. 1980). Thus, any procedural default on the part of petitioner in failing to raise objection at trial to the prosecutorial conduct collaterally attacked in the within habeas corpus action does not preclude review by a federal court.

### B.

■ As was made amply clear in *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), the scope of federal habeas corpus review on a claim of prosecutorial misconduct during a state criminal proceeding is generally a narrow one tailored by the Due Process Clause of the fourteenth amendment. Although federal courts often exercise supervisory power to police undesirable prosecutorial conduct in federal criminal proceedings, the ordinary trial error committed by a state prosecutor is beyond the admonition of a federal habeas corpus court unless it approaches the magnitude of egregious misconduct.

■ Thus, the state criminal proceeding below must be examined in its entirety, *id.* at 643, 94 S.Ct. at 1871, to determine whether the challenged prosecutorial conduct "made [petitioner's] trial so fundamentally unfair as to deny him due process." *Id.* at 645, 94 S.Ct. at 1872. Under this standard of habeas corpus review, "a determination on the question of fundamental unfairness is to be made after viewing the totality of the circumstances." *Hayton v. Egeler*, 555 F.2d 599, 604 (6th Cir.), *cert. denied*, 434 U.S. 973, 98 S.Ct. 527, 54 L.Ed.2d 463 (1977). "When specific guarantees of the Bill of Rights are involved," however, the Court must take "special care to assure that prosecutorial conduct in no way impermissibly infringes them." *De-*

*Christoforo, supra* 416 U.S. at 643, 94 S.Ct. at 1871.

■ Turning to the prong of petitioner's claim challenging the subject matter of certain areas of the prosecutor's inquiry at trial, the Court finds that the prosecutor's line of inquiry suggesting a police cover-up was not fundamentally unfair. In addition to a defense alibi, part of the trial strategy was a claim of misidentification. Relying upon the testimony that each of the victims was attacked by the same assailant, defense counsel presented evidence that petitioner had been a suspect in a number of the earlier sexual assaults but had neither been arrested nor prosecuted for the attacks.

It is abundantly clear that defense counsel attempted to generally exculpate petitioner under the following theory: The initial police investigation exonerated petitioner of involvement in the earlier attacks; therefore, petitioner could not be the same assailant who perpetrated the subsequent attacks.

The prosecutor apparently responded to this strategy by presenting evidence attempting to demonstrate that petitioner originally escaped prosecution because of a police cover-up. Thus, this line of questioning by the prosecutor was calculated to rebut the evidence introduced by defense counsel.

The sexual interests of the petitioner and his wife were a subject, however, that arose under a different set of circumstances. Defense counsel introduced the wife's diary to substantiate petitioner's alibi defense. Within the pages of the diary there were references to various sexually orientated books and magazines. The prosecutor unilaterally made these references an issue at trial by questioning petitioner's wife at length on her interest in these materials. Petitioner was also questioned on the subject by the prosecutor. Moreover, the prosecutor interrogated petitioner's wife on the intimacies of their sexual relationship.

Recognizing both that no objection was made to the prosecutor's questions and that the issue of the admissibility of this testi-

mony is one of state law[2], the prodding of the prosecutor into these areas nonetheless greatly concerns the Court. Whatever relevance the subject matter may have had at petitioner's trial is grossly outweighed by its prejudicial effect. The prosecutor's conduct in engaging in this patently prejudicial line of inquiry is inexcusable.

■ The second prong of petitioner's claim of prosecutorial misconduct focuses principally upon three passages in the prosecutor's closing argument. Each of the challenged remarks was delivered in the prosecutor's response to defense counsel's closing argument.

The first passage concerns the issue of a police cover-up. The issue was one upon which considerable evidence was adduced at trial and therefore it was a legitimate subject for closing argument. In his summation, however, the prosecutor transformed the issue into an opportunity to attack the petitioner personally and plead with the jury to "take care of this rapist."

Who brought out the coverup? He did. He called Cutright. He called Traub. Wouldn't we be remiss if we didn't ask them some of the questions we did? And maybe he didn't want to use the word, but I'll ask you, what is it when there is a secret meeting between high officials where they take an oath of secrecy? What is it where never before at any time was a Captain assigned to a case and all of a sudden went on a case? What is it when there was a warrant issued for a man's arrest that is never served? What is it that the detectives who were on that case were never again assigned to that case? What does it mean when the records with his name on them are missing from the police department? What does that mean? Coverup. I'll say it. I'll say it.

But we don't have to prove a coverup. That is for another day. That is for

another day. The first thing we got to do is take care of this rapist right here. Right here.

The second passage concerns the prosecutor's argument that it would not have been necessary to present a defense at trial if the state had not proven its case beyond reasonable doubt. The remark clearly demonstrates the prosecutor's attempt to transform defense counsel into an expert witness against his own client.

And I ask you, [defense counsel], if that case wasn't proved beyond a reasonable doubt, if he thought in his expert opinion as a lawyer that those girls did not prove that case to you beyond a reasonable doubt, why were we subjected to all this bunk? Why?

This tactic is constitutionally impermissible. It strikes at the core of the sixth amendment, including the specific guarantees of assistance of counsel and confrontation of witnesses.

In the third passage challenged the prosecutor attacked the constitutional presumption of innocence afforded all criminal defendants.

Rights. Reasonable doubt. He spent 10 minutes on rights. Lord knows. We take an oath to uphold those rights. And reasonable doubt. There is other rights. I can tell you the presumption of innocence was never meant to shield a man so actually guilty of a crime. Never meant to do that.

.     .     .     .     .

And he talks about rights. Don't talk about rights when girls in our community are subjected to what Mr. Mostade did to them.

## C.

■ Under the narrow standard applied in reviewing a petition for habeas corpus relief, "[p]rosecutorial argument must be so egregious as to render the entire trial fun-

2. See Cook v. Bordenkircher, 602 F.2d 117, 121 (6th Cir.), cert. denied, 444 U.S. 936, 100 S.Ct. 162, 62 L.Ed.2d 105 (1979) (failure to object is a significant consideration in weighing the merits of a prosecutorial misconduct claim); Oliphant v. Koehler, 594 F.2d 547, 555 (6th Cir.), cert. denied, 444 U.S. 877, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979) (admissibility of evidence is a question of state law).

damentally unfair." *Cook v. Bordenkirch-er*, 602 F.2d 117, 119 (6th Cir.), *cert. denied*, 444 U.S. 936, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979). Each case requires a full review of its own unique facts. *Id.* at 120. There are a number of factors that must be taken into account in examining the prosecutor's conduct at petitioner's trial:

> ... the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proofs introduced to establish the guilt of the accused.

*United States v. Leon*, 534 F.2d 667, 679 (6th Cir. 1976). Based upon these considerations, the Court finds that the prosecutor's conduct in delivering his closing argument was of such an egregious nature that it violated petitioner's due process rights guaranteed under the fourteenth amendment.

It is clear that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *DeChristoforo, supra* 416 U.S. at 647, 94 S.Ct. at 1873. Nonetheless, in this case the remarks are largely unambiguous and fatally prejudicial.

There are no conflicting inferences arising out of the prosecutor's attempt to use defense counsel as an expert witness against his own client. By questioning the motives for presenting a defense if counsel did not believe that the State had proven its case, the prosecutor unconstitutionally infringed upon petitioner's sixth amendment rights. The remark can only have operated both to deceive the jury about some of the most fundamental of our constitutional rights, imbued in the sixth amendment, and to penalize petitioner for exercising those rights.

Similarly, there is no uncertainty over the meaning of the remark that "the presump-

tion of innocence was never meant to shield a man so actually guilty of a crime." The prosecutor's plea that petitioner should not be presumed innocent is just as appalling as the comments directed at defense counsel's motivation for presenting the case. "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126, *rehearing denied*, 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976). This line of argument deployed by the prosecutor is inimical to the constitutional presumption of innocence extant in all criminal proceedings and therefore substantially diminished petitioner's ability to receive a fair trial.

In addition to the misleading nature of many of the prosecutor's remarks, his closing argument on the whole was an emotion evoking, personalized attack waged upon petitioner. The prosecutor's last words to the jury are reflective of the overall impassioned tone of his closing argument.

> What I'm asking you, please, don't let those girls become victims twice. Don't let them become victims twice at the hands of this man, first of all; and secondly, have a system that ignored them. Let it be heard that when girls in our community are so sure—eight of them. Eight of them. He is saying there is eight mistaken identifications in this case. Ludicrous. When eight girls come into this Court and say this is the man, that somebody is going to listen, and let it be heard all the way to Sand Run Park, please, so the next time some mother or some mother's daughter walks there they won't have to fear this man sticking a gun in their head.

As is customary, closing arguments at petitioner's trial were "billed in advance to the jury as a matter of opinion and not evidence." *DeChristoforo, supra* 416 U.S. at 646, 94 S.Ct. at 1873. But the passages challenged herein are not "a few brief sentences in the prosecutor's long and expectably hortatory closing argument." *Id.* at 647, 94 S.Ct. at 1873. Rather, these re-

marks are exemplary of the unparalleled "fire and brimstone" character of the prosecutor's closing argument. This form of prosecutorial misconduct permeated the entire closing argument and was not isolated.

To a large extent closing arguments are necessarily a product of improvisation. Nonetheless, the persistence of the prosecutor in relying upon an impassioned, ad hominem delivery of his closing argument evinces that the remarks complained of were deliberately placed before the jury. This is not a case where an isolated prejudicial phrase inadvertently finds its way into the prosecutor's closing argument.

This case presents a paradigm of the level of egregious misconduct that requires a federal court to examine closely the evidence introduced at trial. If the strength of the proof of guilt is not overwhelming, then the prosecutorial misconduct deprived petitioner of a fair trial and the petition for habeas corpus relief must be granted. *See Cook v. Bordenkircher, supra.*

The crimes charged in the state criminal proceedings were both violent and lecherous, and the facts surrounding the lascivious acts were largely undisputed. Petitioner, however, sharply contested his involvement and presented alibi witnesses. All of the victims testified to the identity of their assailant upon a single relatively brief and traumatic encounter. Some of the victims were testifying to events that occurred when they were very young and up to ten years prior to trial.

Together with his alibi defense, petitioner maintained that he had been mistakenly identified by the victims. Although each victim had ample opportunity to observe her assailant, "there is still the problem that this was identification of a total stranger in the midst of a violent crime. Such identification, despite complete good faith of the witness, can be mistaken." *Hayton v. Egeler, supra* at 605 (Edwards, J. dissenting).

The proverbial untrustworthiness of the identification of strangers is an important concern in the instant case because the victims were each testifying to a single trau-

matic event occurring years ago and at a time when some were very young. *See United States v. Wade,* 388 U.S. 218, 228–29, 87 S.Ct. 1926, 1932–33, 18 L.Ed.2d 1149 (1967). Moreover, that petitioner was acquitted by the jury on all but two of the most recent crimes charged further demonstrates that proof of guilt was not overwhelming.

Therefore, the prosecutorial misconduct violated petitioner's constitutional rights for two reasons. First, the prosecutor's reliance in his closing argument upon defense counsel as an expert witness against petitioner abridged the sixth amendment. In this respect the prosecutor's remarks impermissibly infringed upon specific guarantees embodied in the Bill of Rights. Second, the egregious pattern of misconduct engaged in by the prosecutor deprived petitioner of a fair trial, as the competent proofs of guilt were not overwhelming, and thus violated the Due Process Clause of the fourteenth amendment.

## IV.

## CONCLUSION

Upon consideration of the Magistrate's report and recommendation, a de novo determination of petitioner's sixth claim for relief, and an independent review of the entire record, the Court concludes that an evidentiary hearing is not required and that petitioner's sixth claim of prosecutorial misconduct is well taken. The Court therefore rejects the Report and Recommended Decision of the Magistrate.

Accordingly, the within petition for habeas corpus relief is hereby granted. Judgment shall be entered for petitioner; he shall be released from custody unless the State retries him within 90 days from the date of this Order.

IT IS SO ORDERED.