**Gerald Wayne PHELPS, Petitioner,**

v.

**Jack R. DUCKWORTH and Theodore L. Sendak, Attorney General of Indiana.**

**No. EV 78–192–C.**

United States District Court,
S.D. Indiana,
Evansville Division.

Dec. 14, 1983.

John D. Clouse, Evansville, Ind., for petitioner.

John G. Bunner, Evansville, Ind., L. Charles Lukmann, III, David L. Steiner, Indianapolis, Ind., for respondents.

## MEMORANDUM

BROOKS, District Judge.

This cause is before the Court on petition of Gerald Wayne Phelps, a prisoner at the Indiana State Prison, Michigan City, Indiana, for Writ of Habeas Corpus. Counsel was appointed for the petitioner in the presentation of his *pro se* application. A brief was filed in support of the petition. The respondents have filed a "Return to Order

to Show Cause." The petitioner's request for an evidentiary hearing was denied by the Court on July 30, 1981. Also before the Court is the Record of Proceedings considered by the Indiana Supreme Court on direct appeal of the convictions involving the petitioner. In addition, certain Requests for Admission filed by the petitioner and admitted by the respondents also are considered, pursuant to Rule 36, Federal Rules of Civil Procedure.

## I FACTUAL SUMMARY

Petitioner Gerald Wayne Phelps is in the custody of the respondents, the Attorney General of the State of Indiana and the Warden of the State Prison, Michigan City, Indiana, pursuant to convictions obtained in Vanderburgh County, Indiana, in 1974. He is serving concurrent sentences of life imprisonment on a conviction of kidnapping and an indeterminate sentence of two (2) to twenty-one (21) years on a conviction of rape. The sentences were imposed by the Superior Court of Vanderburgh County, Indiana, on November 26, 1974, after petitioner was found guilty by a jury of the charges at a trial on October 28–31, 1974. His convictions were earlier affirmed by the Indiana Supreme Court in a published opinion (*Phelps v. State*, 266 Ind. 66, 360 N.E.2d 191 (1977)).

The petition focuses on four alleged instances of prosecutorial misconduct which occurred during the petitioner's trial. Each of the instances is clearly indicated in the record, all involving statements made by the court's deputy prosecutor trying the case, James M. Redwine.

Following is a summary, with quotations from the record, of the petitioner's claims of prosecutorial misconduct:

1. During the trial, the defendant (the petitioner here) took the stand in his own defense and presented his account of events which occurred on the night of the alleged rape and kidnapping. In summary, the petitioner testified he engaged in sexual intercourse with the prosecuting witness on the night he was arrested, but testified that it was with her consent. According to

his testimony, the couple had previously engaged in sexual intercourse on other occasions. He contended that consensual sexual intercourse took place in an automobile in the parking lot of a bar where the prosecuting witness was employed as a dancer. It was while they were in the car, the petitioner claims, that another car pulled up nearby and a man, not identified by the petitioner, interrupted them and forcibly removed the prosecuting witness from the car. Petitioner then testified he retreated to the bar. A lengthy cross-examination ensued in which the petitioner's story was further explored. Questions dealt with the nature of the petitioner's acquaintance with the prosecuting witness, the description of the parking lot where the incident took place, and statements made by the petitioner after he re-entered the bar. Petitioner said he denied that he raped the prosecuting witness when he was approached by a bar employee and informed that the prosecuting witness had made such an accusation in a telephone call. He testified that he had denied the accusations after he was arrested and requested protection from the unidentified assailant who he said had removed the prosecuting witness from the car. He further testified that he offered to take a polygraph examination, but that the police refused to give him one. Following is the crucial excerpt from the record which is the basis for petitioner's first allegation of prosecutorial misconduct:

Q. Well, then, am I to assume, Mr. Phelps, that that is all you said to the police?

A. Other than, you know, just normal conversation.

Q. But nothing about the crime?

A. No sir. We talked about a wreck that I had, and that's about it.

Q. Well, do you think it might have been in your best interests to have told the police and the Prosecutor's Office this story you're telling this jury?

MR. BUNNER: I object....

BY THE COURT: The objection is sustained. He has no obligation to tell the prosecutor anything.

MR. REDWINE: Your Honor, if he has taken the stand and waived his Fifth Amendment rights, I think he has waived them for all purposes.

MR. BUNNER: If the Court please, Mr. Redwine has continuously been asking witnesses why didn't they talk to him. He, at no time, was obligated to talk to the police or the prosecutor; and after I am representing the man, I would never advise the man to go by himself to the Prosecutor's Office and talk to the Prosecutor about something; that's done through his lawyer, through me or through Mr. John. Mr. Redwine knows that. He is attempting, he has throughout this trial, attempted by unethical means this jury, and at this time, I think the cumulative effect of it has been to prejudice them, and I at this time move for a withdrawal of the submission of this cause for misconduct on the part of Mr. Redwine.

MR. REDWINE: I'd like to respond, your Honor. At the time of this rape and kidnapping, and at the time that Phelps was at the police station—.

BY THE COURT: Are you responding to the motion?

MR. REDWINE: Yes. Mr. Bunner, I assume, didn't even know about the crime and couldn't have been in the case. So, what Phelps may or may not have said to the police, Mr. Bunner had no control over.

BY THE COURT: He had no obligation to say anything. Read the last two or three questions.

COURT REPORTER: "Well, then, am I to assume, Mr. Phelps, that that is all you said to the police?" "Other than, you know, just normal conversation." "But nothing about the crime?" "No, sir. We talked about a wreck that I had, and that's about it." "Well, do you think it might have been in your best interests to have told the police

and the Prosecutor's Office this story you're telling this jury?" Then, Mr. Bunner objected.

BY THE COURT: The objection to that question is sustained, and the motion to withdraw the submission is overruled.

Except for the two instances in which the trial judge said, "He had no obligation to tell the prosecutor anything," no admonishment was given to the jury. In fact, the record reveals that the question petitioner finds most offensive to his rights ("Well, do you think it might have been in your best interests to have told the police and the Prosecutor's Office this story you're telling this jury?") was re-read by the court reporter in the jury's presence when asked to do so by the trial judge.

2. The second instance of alleged prosecutorial misconduct occurred during the *voir dire* examination of prospective juror Bernita Hancock by the petitioner's attorney. The attorney was attempting to determine whether the prospective juror understood the presumption of innocence afforded to defendants in criminal actions when the following exchange took place:

Q. It's up to the State to prove beyond a reasonable doubt every element of the crime with which the defendant's charged.

A. Right.

Q. And if they fail, then they have not met their burden. Now as Gerald Phelps sits here today, is he innocent or guilty in your mind?

MR. REDWINE: Objection, Your Honor. The law may presume him ...

BY THE COURT: The law presumes him to be innocent.

MR. JOHN: That is what I was getting at, Judge. I'll rephrase that.

Q. Our law, our system of justice is that as this defendant sits here today, he's innocent and ...

MR. REDWINE: Your Honor, I still object to that. It is he's presumed innocent. There's nothing in the law that says he's innocent or he wouldn't be here.

MR. BUNNER: At this time, the defendant moves to withdraw the submission of this cause for misconduct on the part of the Prosecuting Attorney ... or the Deputy Prosecuting Attorney, and I would like to be heard on that matter.

BY THE COURT: Outside?

MR. BUNNER: Yes.

BY THE COURT: Let's go back in Chambers.

After arguing in chambers and returning to the courtroom, the judge overruled the motion for a mistrial. The jury was present at the time. The judge ordered the statements stricken and "asked" the jury to disregard the statement of counsel for the state.

3. The third instance of alleged prosecutorial misconduct occurred during the direct examination of the prosecuting witness. During that testimony, the witness began volunteering hearsay statements when she was interrupted by the objection of defense counsel. The exchange between attorneys was as follows:

Q. Theresa, when Phelps was strangling you when he was raping you, did he leave any marks on your neck?

A. Well, when I was at the lady's house to call, I had some ... my neck was hurting, and I asked them was there any marks there—.

MR. BUNNER: Now, I am going to object as to any conversation she had with some woman, as unidentified.

A. And doctors also—.

MR. BUNNER: And I would ask that the Court admonish the witness.

MR. REDWINE: I don't think that the witness needs to be admonished. I think she's been punished enough.

MR. BUNNER: Now, at this time, if the Court please, the defendant moves for withdrawal of submission of this cause from the jury misconduct, continued on the part of Mr. Redwine in making comments in front of the jury. I think this is highly improper and highly prejudicial, and it is designed for that purpose, and that purpose alone.

MR. REDWINE: I have a response I would like to make to that. I think this witness is scared, is hurt, has a lot that she cannot testify to out of fear; that she does not need to be admonished; that she certainly has been punished; and I think it's certainly ungentlemanly of Mr. Bunner to say she needs to be admonished when I think Mr. Bunner needs to be admonished.

MR. BUNNER: I renew at this point for misconduct on the part of the Prosecuting Attorney, my motion for withdrawal of the submission for the reason that any admonishment by the Court to the jury could not be sufficient to change the error and wipe those statements from their mind.

BY THE COURT: Mrs. Clem, the law prohibits the use of hearsay. Hearsay is what somebody else told you. You can't say what somebody else has told you, it's inadmissible. The persons who said it would have to be called as witnesses to testify directly. There is very good reasons why that's the law. The Motion for mistrial will be overruled, but the jury will be strongly admonished to disregard the remarks of counsel for the State, which I think were slightly prejudicial, and I hope you will disregard it.

Obviously, petitioner contends the statements made by the prosecutor were intended to prejudice the jury against him.

4. The final instance of alleged prosecutorial misconduct occurred during closing argument by the deputy prosecutor. He made the following statement:

MR. REDWINE: "He tried to kill this woman. Now, this case may be the most important thing you ever do in your lives for this community, and I wouldn't ask anybody to send anyone to prison for life unless I thought it was richly deserved, and unless I thought it was necessary for this community—.

MR. BUNNER: At this time, if the Court please, the defendant has an objection to state. The defendant moves for the withdrawal of the submission of the cause for misconduct on the part of the Prosecuting Attorney in stating his opinion as to the necessity of the defendant being sentenced, and in stating that his conviction was necessary for the well-being of the community. The defendant believes that an admonition to they [sic] jury is not sufficient to cure the error caused by the misconduct on the part of the Deputy Prosecuting Attorney.

BY THE COURT: Show the motion is overruled.

The Court now must consider each incident and the allegations made by the petitioner which he claims support a contention that he did not receive a fair trial. Further, the Court considers the cumulative effect these incidents had on the trial, if indeed they individually would bear on the fairness of the trial.

■ The first issue to be resolved is a contention by the State of Indiana that the petitioner, Gerald Wayne Phelps, failed to exhaust his remedies in state court as to certain grounds stated in his petition.[1] The respondents state, "What petitioner has exhausted and what is really claimed under all grounds presented herein is prosecutorial misconduct." However, the Indiana Supreme Court in its consideration of the petitioner's appeal reveals that it considered all of the instances of alleged misconduct in the petition before the Court. Whether under the term "prosecutorial misconduct" or some other allegation of deprivation of constitutional rights, the petitioner had his claims surveyed and settled by the state's highest court before resorting to relief in this Court.

The Seventh Circuit Court of Appeals has stated, "(A) habeas corpus petition which presents a mere variation in legal theory, rather than a different legal claim from that presented in state court, will not run afoul of the exhaustion doctrine." *Macon v. Lash*, 458 F.2d 942, 948 (7th Cir. 1972). That position was recently endorsed again by the Seventh Circuit in *United States of America ex rel Nance v. Fairman, Warden*, 707 F.2d 936 (1983).

In light of the Seventh Circuit guidelines and the Indiana Supreme Court's apparent consideration of the specific instances of alleged prosecutorial misconduct outlined, *supra*, the Court finds the petitioner exhausted his state remedies as required before this Court can consider the petition.

## II

The first allegation of prosecutorial misconduct, best exemplified by the question on petitioner's previous failure to offer a story about the incident, represents the most serious incident included in the petition.

■ Our focus begins with the Fifth Amendment which gives criminal defendants a right not to be a witness against themselves. This issue long has been explored by courts. The prosecutor's attempt to cross-examine the petitioner on his failure to tell the police or the prosecutor his version of events after his arrest is constitutionally impermissible. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1975). The language of the principal case on this issue could not be more clear:

Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.

*Id.* at 617, 96 S.Ct. at 2244.

The Court refers to warnings a State is required to give an arrestee at the time of his arrest. *See, Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694

---

1. Petitioner asserts the following grounds: "1. Ground One: Conviction obtained by a violation of the privilege against self-incrimination. 2. Ground Two: Conviction obtained by prosecutorial misconduct and by a violation of the presumption of innocence. 3. Ground Three: Conviction obtained in violation of the privilege to be confronted by the witnesses against him.

(1966). The record in this case reveals such warnings were given to the petitioner as he was put into a police vehicle and arrested.[2] "The State may not use a criminal defendant's silence after he has been given the *Miranda* warnings to impeach an exculpatory story brought forth later." *United States ex rel Allen v. Franzen*, 659 F.2d 745, 747 (7th Cir.1981), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1975, 72 L.Ed.2d 444 (1982). This protection of a defendant's silence, as the *Doyle* decision makes clear, is fundamental adherence to the Constitution.

> [W]hile it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Doyle*, 426 U.S. at 618, 96 S.Ct. at 2245.

Respondents contend the prosecutor's action "did in no way make petitioner's trial so fundamentally unfair as to deny him due process." The implicit assertion is that the prosecutor's action constituted harmless error.

█ The federal rule with respect to harmless error is found in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The Court cited the rule of *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963), which stated: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* at 86–87, 84 S.Ct. at 230. The *Chapman* opinion noted that rule "emphasizes an intention not to treat as harmless those constitutional errors that 'affect substantial rights' of a party." 386 U.S. at 23, 87 S.Ct. at 827. Further, the Court places the burden on the party which

benefited from any error to demonstrate the harmless nature of the alleged error. Not only have the respondents failed to meet that burden, this Court doubts that it could in light of *Doyle* and the record of the petitioner's case.

The credibility of the petitioner was crucial to his case. The prosecutor had adopted an approach in his cross-examination of any defense witness best summarized as, "Why didn't you tell the police or me this story before now?" As the record shows, this approach also was adopted with the defendant. If the prosecutor was attempting to impeach the earlier witnesses by their failure to report exculpatory information about the petitioner before trial, and if he succeeded in clouding their testimony in the jury's mind by so doing, his further cross-examination of the petitioner on the silence issue could have done grave damage to the petitioner's credibility. Under our Constitution, this simply is not permissible.

The objection to the prosecutor's question was sustained, but the trial judge failed to specifically admonish the jury to disregard the question and subsequent argument between counsel in the jury's presence (during which the offending question was read again by the court reporter at the judge's behest). Apparently, the Indiana Supreme Court believed the judge's two statements that "he had no obligation to say anything" were sufficient to remove this cloud from the record. This Court disagrees. The trial judge's statements appear to be general responses to counsel's argument, not a direct statement to the jury about the inappropriate question. If this was an attempted admonishment, it was insufficient in light of the law.

The *Chapman* decision requires this Court to find beyond a reasonable doubt that an error outlined in this petition did not contribute to the guilty verdict. This we cannot do. Therefore, this violation

---

**2.** Later U.S. Supreme Court decisions have altered the *Doyle* rule with respect to a defendant's silence *before* an arrest. *See, Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). This fact situation clearly falls within the post-arrest, rather than a pre-arrest, silence.

alone is sufficient to grant the petitioner's Writ of Habeas Corpus. The other three instances of alleged prosecutorial misconduct cited by the petitioner perhaps would not be sufficient, standing alone, to compel granting the petition. However, those instances also should be considered, as well as the cumulative effect these incidents may well have had on the outcome of the trial.

### III

At issue in the second part of petitioner's allegations is the presumption of innocence afforded defendants in a criminal action. The offensive statement was made by the deputy prosecutor when he said in front of the panel of jurors, "There's nothing in the law that says he's innocent or he wouldn't be here." The Court trial judge overruled the motion for a mistrial, but did deliver an admonishment to the jury to disregard the prosecutor's statement.

It should be noted that the record reveals that defense counsel was not correctly stating the presumption of innocence to the prospective juror in his examination. In arguing a matter of semantics the prosecutor was justified in objecting to the content of defense counsel's question, but it is difficult to conceive a more inflammatory statement than that uttered as part of the objection. The layman could easily conclude, based on that statement, that the prosecutor was saying the fact petitioner was facing trial should weigh in the determination of guilt or innocence.

■ Again, the Supreme Court has clarified a criminal defendant is entitled to have his guilt or innocence determined "solely on the basis of the evidence introduced at trial, and not on the grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Taylor v. Kentucky,* 436 U.S. 478, 485, 98 S.Ct. 1930, 1934, 56 L.Ed.2d 468 (1978). "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams,* 425 U.S. 501, 503, 96 S.Ct. 1691,

1692, 48 L.Ed.2d 126 (1976), *reh. denied,* 426 U.S. 954, 96 S.Ct. 3182, 49 L.Ed.2d 1194 (1976). The respondents again contend that "there could have been no possible prejudice to the petitioner from this remark." This Court will agree that the prompt admonishment to the jury to disregard the remark makes this incident less offensive. But it is difficult to conclude that no prejudice occurred as a consequence of the prosecutor's statement. Any undermining of the presumption of innocence could substantially diminish the petitioner's chances to receive a fair trial.

### IV

■ The third instance of alleged prosecutorial misconduct occurred during the direct examination of the prosecuting witness. By stating his opinion that the witness was scared and that her testimony was affected by fear, the prosecutor again was trying to prejudice the jury against the petitioner. The most obvious implication is that the petitioner had threatened the prosecuting witness, or that he had acted in some way that prevented her from telling the entire story. This remark was improper. *United States v. Rios,* 611 F.2d 1335, 1342–43 (10th Cir.1979). The basic rule is that a prosecutor may not imply to the jury that other evidence supporting guilt exists but has not been introduced. *United States v. Fearns,* 501 F.2d 486 (7th Cir. 1974). *See also,* ABA Standards for Criminal Justice § 5.9 (1971). In the *Rios* decision, the Court held remarks made by the prosecutor constituted prejudicial error when his final argument drew the inference that the defendant had made threats against witnesses who had testified for the government. No basis for such an inference existed in the evidence presented and the defendant's credibility was crucial to the outcome of the trial.

It should be noted, however, that the trial judge delivered a strong admonishment to the jury with regard to the prosecutor's statement. Standing alone, this incident probably would not be sufficient to compel granting the petitioner's writ.

## V

The fourth instance of alleged prosecutorial misconduct occurred during the prosecutor's final argument before the jury. The record shows the prosecutor expressed his personal opinion as to the petitioner's guilt and invited the jury to reach a verdict based on that opinion. Such statements have been condemned as improper. *United States v. Rios, supra*, 611 F.2d at 1343. *See also*, Code of Professional Responsibility, Disciplinary Rule 7–106(C)(4). The Court overruled the objection lodged by petitioner's counsel to this expression of personal opinion. The objection should have been sustained and an admonishment given to the jury to consider the evidence presented rather than the prosecutor's opinion as to what kind of sentence the petitioner deserved, implying therein that the petitioner was indeed guilty.

## VI

The United States Supreme Court stated in *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), that the scope of federal habeas corpus review on a claim of prosecutorial misconduct during a state criminal proceeding is generally a narrow one tailored by the Due Process Clause of the Fourteenth Amendment. The ordinary trial error committed by a state prosecutor "is beyond the admonition of a federal habeas corpus court unless it approaches the magnitude of egregious misconduct." *Mostade v. Engle*, 507 F.Supp. 402, 405 (N.D.Ohio 1980). To make this determination the state criminal proceeding must be examined in its entirety to determine whether the challenged prosecutorial conduct "made (petitioner's) trial so fundamentally unfair as to deny him due process." *Donnelly*, 416 U.S. at 645, 94 S.Ct. at 1872. Moreover, when specific guarantees of the Bill of Rights are involved the Court must take "special care to assure that prosecutorial conduct in no way impermissibly infringes them." *Id.* at 643, 94 S.Ct. at 1871. In *United States v. Leon*, 534 F.2d 667 (6th Cir.1979), the Court identified several factors necessary to consider in examining a prosecutor's alleged misconduct: (1) the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately placed before the jury; and (4) the strength of the competent proof introduced to establish the guilt of the accused.

This Court has carefully examined the parties' pleadings and the trial record, viewing the challenged remarks in the totality of the circumstances. The Court has considered the strength of competent proof introduced to establish the guilt of the petitioner. In consideration of the entire case, the conclusion is inescapable to this Court that the prosecutor's misconduct was of such an egregious nature that it violated petitioner's due process rights under the Fourteenth Amendment. Even the Indiana Supreme Court, which denied this petitioner's appeal, stated, "[I]t is apparent the prosecutor was constantly seeking to cloud the record with error...." *Phelps*, 360 N.E.2d at 194.

The question determinative of the jury's verdict was the relative credibility of the prosecuting witness and the petitioner. The paramount issue was consent. The participants' stories were completely contradictory not only on the issue of consent but as to location at which the incident occurred and other matters. Under these circumstances, the petitioner's story should have been weighed by the jury without the interference of prejudicial remarks repeatedly made by the prosecutor. The Court is compelled to find that the alleged incidents of misconduct on the part of the prosecutor were so egregious and so prejudicial that the petitioner lost his right to a fair trial and was denied due process of law. Such misconduct was not harmless beyond a reasonable doubt.

This is not a decision lightly undertaken by the Court. The charges against the petitioner were serious; yet, the allegations about prosecutorial misconduct were serious, too. The misdeeds of the prosecu-

tor have been examined not to "punish society" but to determine whether they rendered the petitioner's trial unfair. *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The Court agrees that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Id.* at 219, 102 S.Ct. at 947.

In this case, the denial of defendant's right to silence by the questions asked by the prosecutor in his cross examination of the petitioner was the most serious offense. That incident, together with the other less serious statements by the prosecutor, constitutes an aggregation of errors which can leave no doubt that the petitioner's fundamental rights were prejudiced and violated.

Accordingly, the Petition for Writ of Habeas Corpus is GRANTED and the petitioner shall be released from custody pursuant to his 1974 conviction unless the State retries him within ninety (90) days from the date of this judgment.