UNITED STATES of America,
Plaintiff-Appellee,

v.

James M. MILLEN, M.D.,
Defendant-Appellant.

No. 78–5231.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 13, 1978.

Decided Feb. 27, 1979.

As Amended on Denial of Rehearing
April 4, 1979.

John Tim McCall, Martha A. Lawfer, Louisville, Ky., for defendant-appellant.

Albert Jones, U. S. Atty., James H. Barr, C. Fred Partin, Asst. U. S. Attys., Louisville, Ky., for plaintiff-appellee.

Before EDWARDS, Chief Judge, WEICK, Circuit Judge and PECK, Senior Circuit Judge.

EDWARDS, Chief Judge.

Defendant Millen, a 61-year-old medical doctor, appeals from convictions on 20 counts of unlawful distribution of Demerol, a controlled substance, in violation of 21 U.S.C. § 841 (1976), and one count of involuntary manslaughter, in violation of 18 U.S.C. § 1112 (1976). The trial was before a jury in the United States District Court for the Western District of Kentucky. After verdicts described above had been entered, the District Judge entered sentences of five years on each of the distribution counts, all to run concurrently, and three years on the count of involuntary manslaughter, likewise to run concurrently with the distribution sentences. Finding overwhelming evidence to support the convictions for distribution of Demerol, we affirm the convictions and sentences on the 20 counts for violation of 21 U.S.C. § 841 (1976), in spite of a number of instances of prosecutorial overkill.

As to the involuntary manslaughter count, we vacate the conviction and remand for new trial because we are by no means sure that the prosecution would have prevailed as to this count without resort to measures which exceed the standards of fairness and due process exemplified by the holding in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). We cannot apparently remind government counsel too often of the *Berger* standard:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Id.* at 88, 55 S.Ct. at 633.

## THE DRUG COUNTS

Appellant was tried on an indictment encompassing 24 counts of unlawful distribution of the drug Demerol. The government offered proofs that defendant had written 23 prescriptions for Demerol for an army private named Bruce Howell prior to his death as a result of an overdose of Demerol on the Fort Knox Military Reservation. Government proofs in relation to this matter include testimony of a handwriting expert who testified that Dr. Millen wrote 23 of the prescriptions. It also included Dr. Millen's admission at trial that he had written some of the prescriptions introduced in evidence, although he testified that he had not known of Howell's employment of them for drug abuse purposes and that the prescriptions had been given for the treatment of headaches suffered by Howell. Testifying at the trial, Dr. Millen conceded that it would be against accepted medical practice for a physician to write a prescription for Demerol for a person whom he knew to be a drug addict. Dr. Millen also testified that Howell was a close friend and that he had employed him around his house and let him have access to his house where he kept prescription blanks.

The government also presented as a witness at trial Howell's wife, Dawn Howell. She testified that her husband was a drug addict; that he employed Demerol tablets for drug abuse purposes by crushing the tablets, mixing them with water, and injecting them in his veins; that she had seen Dr. Millen in her husband's company while her husband crushed Demerol tablets, made them into a solution and injected the solution in his veins, and that she had likewise seen Dr. Millen crush Demerol tablets, make them into a solution and inject them in his own veins.

Similar testimony was presented by the government by a male witness named Taylor Linkfield. The detailed testimony of these two witnesses, plus the condition of Howell's body, as testified to by the pathologist who did the postmortem, furnished strong evidence from which the jury could have found that Dr. Millen had, indeed, violated the statute by making Demerol prescriptions available to Howell for drug abuse rather than medical purposes.

■ We have reviewed with care appellant's claims that the Assistant United States Attorney in charge of this case had failed to comply with the District Court's order calling for discovery of documents and physical objects intended as exhibits at the trial. In a number of instances it is clear that the government did not furnish these exhibits until the eve of trial or after it had actually begun. In each such instance, there was an objection, and in each such instance the District Judge, while refusing continuance of the trial or mistrial, did grant a delay in the admission of the withheld evidence until, in his judgment, defense counsel had had an opportunity adequately to prepare for cross-examination on the issue concerned. We note the government's argument that its failures were related to the difficulty of accumulating all of these materials in advance of trial. On the entire record of this case, we are inclined to view the government's assurances in this regard with some skepticism. We are not, however, prepared to say that, as to the issues directly bearing upon the drug convictions, the District Judge's remedial measures were completely inadequate or that they were beyond his discretion as a trial judge to employ.

■ We recognize that appellant argued before the District Court, and argues before us, that the drug charges should have been dismissed because the indictment charged appellant with unlawful and knowing *distribution* of Demerol, and relies on *United States v. Leigh*, 487 F.2d 206 (5th Cir. 1973), for his authority in this regard. This court has, however, decided that a charge of "distributing" rather than "dispensing" made

against a physician who was a defendant was a lawful and appropriate indictment. *United States v. Ellzey, M.D.*, 527 F.2d 1306 (6th Cir. 1976). We decline to overrule the *Ellzey* case.

Under these circumstances, we affirm the convictions of the drug counts.

## INVOLUNTARY MANSLAUGHTER

■ As indicated above, appellant was also convicted on a charge of involuntary manslaughter. Count I of the actual indictment in this case, however, was an indictment for murder, with malice aforethought. It read:

### COUNT 1

On or about the 16th day of August, 1977, at the Fort Knox Military Reservation, in the Western District of Kentucky, within the special territorial jurisdiction of the United States, JAMES M. MILLEN, M.D. did, with malice aforethought, murder Bruce Howell by causing a quantity of demerol to be injected into his body.

In violation of Sections 1111(a) and (b), Title 18, United States Code.

We have read this record with care to attempt to find justification for the United States Attorney's office having sought indictment of defendant on a charge of murder, with malice aforethought. We find none. We also feel that the District Judge was in error in denying appellant's motion for a directed verdict as to the first count, at least as it pertained to Section 1111(a). The jury was allowed to take into the jury room the indictment which alleged murder, with malice aforethought. It also had a verdict form which provided for a finding on the issue of second degree murder and/or involuntary manslaughter in the alternative. We believe that the submission of the issue of second degree murder, with malice aforethought, was prejudicial error which may have influenced the jury finding of guilty on the charge of involuntary manslaughter.

■ Further, in vacating the involuntary manslaughter verdict, we rely upon the fact that the Assistant United States Attorney asked a question of witness Unseld which the Assistant United States Attorney must have known would evoke a specific and highly prejudicial reply. The question, however, was so phrased as not to evoke any defense objection. The question and answer involved and the court's ruling thereon is as follows:

Q What was the relationship between you and Doctor Millen and Bruce Howell?

A It was one on a gay basis.

MR. McCALL: I want to object to that, Judge. May I approach the bench. Good Lord.

(WHEREUPON, AT THIS POINT THE FOLLOWING PROCEEDINGS OCCURRED AT THE BENCH BETWEEN THE COURT AND COUNSEL OUT OF THE HEARING OF THE JURY)

MR. McCALL: Judge, I move for a mistrial. That's uncalled for. I don't even know what the man's basis for this is.

BY THE COURT: What does it have to do with it?

MR. PARTIN: It's our position, Your Honor, that the relationship that existed between the defendant and the deceased and the—and this witness formed a basis for a motive for the defendant to write these prescriptions.

BY THE COURT: Oh, no.

MR. McCALL: It's prejudicial as far as my client's rights under the Fourteenth Amendment, and I can't possibly get a fair trial.

BY THE COURT: I'm going to sustain the objection. Overrule the motion and admonish the· jury not to consider it.

(WHEREUPON, THE FOLLOWING PROCEEDINGS OCCURRED IN OPEN COURT)

BY THE COURT: Ladies and gentlemen of the jury, you will not consider that last question and answer for any purpose whatever in this trial.

Before this court the government now contends that the evidence should have been admitted. But neither in advance of eliciting the gay relationship testimony (which we believe to have been done intentionally) nor afterward did the Assistant United States Attorney make an offer of proof which spelled out for the District Judge his theory as to how the gay relationship, if it existed, was probative of the crimes charged in the indictment. This record simply reveals that a highly prejudicial answer was evoked; that the District Judge struck it on objection and instructed the jury to disregard it; and that the government made no effort then or later to justify admission of the evidence. On such a record, we cannot agree with its argument that the answer was admissible on its face. Clearly the prejudicial aspect of the answer given far outweighed any obvious or apparent probative value. See Fed.R.Evid. 403.

In the face of the government's complete failure to present to the District Court a reasoned argument for the admissibility of this evidence out of the presence of the jury, or by means of an offer of proof,[1] we decline to speculate about grounds for admissibility which clearly are not present in this record. It seems apparent to us that the Assistant United States Attorney cleverly evoked a highly prejudicial answer by asking a question which was unlikely to trigger objection. Subsequently he must have felt he had rung the bell and was content to let the District Judge try to unring it, if he could.

We have no doubt that prejudice from this episode could likewise have had some impact upon the jury's consideration of the drug charges. Our affirmance of those convictions rests entirely upon the overwhelming nature of the proofs as to those offenses and the fact that, as to these counts, the prosecutorial abuse outlined above was harmless beyond reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The government's case as to involuntary manslaughter rests upon a much more tenuous basis.

1. *See* Fed.R.Evid. 103.

The District Court's judgments of conviction on the drug counts are affirmed. The District Court's judgment of conviction as to involuntary manslaughter is vacated and this aspect of the case is remanded to the District Court for further proceedings.

PECK, Senior Circuit Judge, concurring in part, dissenting in part.

I concur in the affirmance of defendant-appellant's conviction under the twenty counts for violation of 21 U.S.C. § 841 (1976), and in the vacation of the conviction as to the involuntary manslaughter charge, and dissent only from the majority's remand for retrial. As is clearly demonstrated in the majority opinion, the United States attorney was guilty of questionable action in requesting and obtaining an indictment for murder "with malice aforethought," and of censorable conduct in eliciting the gay relationship testimony which forms the basis for the vacation of the manslaughter conviction and which we unanimously "believe to have been done intentionally." The Government thereafter argued that this testimony was admissible, but neither by a preliminary showing nor by a subsequent proffer of proof did it present any evidentiary basis for that contention. The remand would presumably open the door for the Government to do that which it declined an opportunity to do at trial. I do not feel that it is entitled to another bite at the apple.

Given the fact that defendant was sentenced to twenty valid concurrent 5-year prison terms, we should exercise our discretion to simply vacate a twenty-first invalid concurrent 3-year term, and not permit the United States attorney to subject the defendant to another trial, necessary only because of the Government's misconduct at the first trial. United States v. Brown, 529 F.2d 962, 970 (1976).