James COOK, Petitioner-Appellant,

v.

Donald E. BORDENKIRCHER, Superintendent, Kentucky State Penitentiary at Eddyville, Kentucky, Respondent-Appellee.

No. 78–3589.

United States Court of Appeals,
Sixth Circuit.

Argued April 23, 1979.

Decided June 28, 1979.

William C. Ayer, Jr., Asst. Deputy Public Advocate, Erwin W. Lewis, Asst. Public Defender, Frankfort, Ky. (Court appointed CJA), for petitioner-appellant.

Robert F. Stephens, Atty. Gen. of Ky., Joseph R. Johnson, Asst. Atty. Gen., Frankfort, Ky., for respondent-appellee.

Before WEICK and KEITH, Circuit Judges, and CECIL, Senior Circuit Judge.

KEITH, Circuit Judge.

On September 18, 1975, a Kentucky Circuit Court jury found petitioner James Cook guilty of one count of first degree rape [1] and two counts of sodomy.[2] Pursuant to Kentucky procedure,[3] the jury fixed his punishment at the maximum of 20 years imprisonment on each count. The petitioner was sentenced on September 29, 1975, and the sentences were ordered to run consecutively for a total of sixty (60) years. The Kentucky Supreme Court affirmed the conviction on direct appeal in a brief per curiam opinion. Petitioner then filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The district court denied the writ and petitioner has perfected this appeal. The sole issue raised on direct appeal and in this habeas corpus petition is whether the prosecutor's closing argument was so prejudicial that it violated petitioner's due process right to a fair trial.

As with many rape cases, the principal issue for the jury was whether the woman consented to the acts in question. The (alleged) rape victim testified that while driving on the evening of May 2, 1975, she was pulled over to the side of the road by a car with flashing lights. She testified that petitioner identified himself as a plainclothes police officer and told her that he was going to have to take her in. He then forced open her door, shoved her over into the passenger seat and began driving her automobile. He drove her to a deserted area where, she testified, he raped her. He drove her around again and returned to the original site where additional forced sexual activity took place. Subsequently, they drove to a trailer park where another woman began screaming and beating on her. She ran into the trailer park office where the manager called the police.

The prosecutrix's testimony was corroborated by the trailer park manager who stated that about 1:00 a. m. he heard someone yelling for help. He saw a woman who came running into his trailer crying "Please don't let him come in. He is going to kill me." He further stated that the petitioner came up and said that he wanted to talk with "the girl" but that he (the manager) held him off at gunpoint and prevented him from entering the trailer while he sum-

---

1. See Kentucky Rev.Stat. § 510.040.

2. See Kentucky Rev.Stat. § 510.070.

3. Under Kentucky procedure, the jury makes an initial sentencing determination. The trial judge, however, has the right to reduce the sentence. See Kentucky Rev.Stat. § 532.060 and accompanying commentary. This would be a different case if the jury had absolute sentencing authority since prejudicial argument could easily affect the length of the sentence imposed.

moned the police. The medical testimony indicated that brutal sexual activity had taken place and torn articles of clothing belonging to the prosecutrix were found at the scene of the alleged rape.

Petitioner Cook took the stand in his own defense. He stated that he knew the prosecutrix and had had sexual relations with her 10–12 times previously. He stated that he and the woman had sexual relations at a local motel on the morning of May 2, 1975, and that he then returned home and went with his wife to buy new clothes. Later that day, he drove into Louisville, left his car at a service station to be repaired and went into a nearby bar, the Jungle Lounge, remaining there drinking until sometime after 10:00 p. m. Petitioner then said that he picked up his car and arranged to meet the woman. They met, his car broke down and she drove him home to the trailer park where he lived. When they subsequently returned, petitioner's wife saw the woman and began beating her in a jealous rage. The woman then raced into the trailer park office. Petitioner's testimony as to his prerape activities was supported by a gas station attendant, the bartender at the Jungle Lounge, one of the waitresses there and his wife. In addition, his parole officer stated that she had spoken with Mr. Cook shortly after his arrest and that he had related a similar story to her at that time.

## I.

■ As a preliminary matter, the state alleges that federal habeas corpus review is barred because there was no objection made to any of the prosecutor's closing arguments. Primary reliance is placed upon *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

We reject this claim. *Wainwright* stands for the proposition that under certain cir-

cumstances, failure to comply with a state procedural rule can operate as a bar to habeas corpus relief absent a showing of cause for non-compliance and prejudice to the petitioner. *Wainwright* itself dealt with a situation where failure to comply with a state procedural rule prevented an issue from being raised in the state trial court. Here, however, the alleged error is plainly evident in the record. This court has granted habeas corpus relief in the face of *Wainwright* objections in two cases where plain trial error occurred and counsel failed to comply with state contemporaneous objection rules. *See Rachel v. Bordenkircher,* 590 F.2d 200 (6th Cir. 1978) (prosecutorial comment on defendants failure to take the stand); *Berrier v. Egeler,* 583 F.2d 515 (6th Cir.) *cert. denied* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978) (improper burdenshifting instruction by trial judge).

■ More important, it is clear that under Kentucky law, failure to object at trial does not bar appellate review where "the court is satisfied that the substantial rights of the defendant have been prejudiced." Kentucky R.Cr. 9.26 *See also* Kentucky CR 61.02; *Stone v. Commonwealth,* 456 S.W.2d 43 (Ky.1970). The Kentucky Supreme Court reviewed the allegedly prejudicial closing argument; we are not barred from examining it here.[4]

## II.

■ We are well aware that we possess no supervisory powers over state trial proceedings and that our scope of review over allegedly prejudicial arguments by state prosecutors is narrow.[5] Prosecutorial argument must be so egregious so as to render the entire trial fundamentally unfair. *See Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Cf. Burks v. Egeler,* 512 F.2d 221 (6th Cir. 1975).

4. In this respect, our position is in accord with that of the Fourth Circuit in *Miller v. North Carolina,* 583 F.2d 701, 705–06 (4th Cir. 1978).

5. This court has not hesitated to police prosecutorial misconduct in cases arising on direct appeal. *See United States v. Millen,* 594 F.2d 1085 (6th Cir. 1979); *United States v. Bess,* 593 F.2d 749 (6th Cir. 1979); *United States v. Steinkoetter,* 593 F.2d 747 (6th Cir. 1979); *United States v. Leon,* 534 F.2d 667 (6th Cir. 1976); *United States v. Peak,* 498 F.2d 1337 (6th Cir. 1974). However, it is the responsibility of the Kentucky Courts to police their prosecutors; we have no such authority.

In *Donnelly, supra,* the Court found no constitutional error in ["i]solated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence . . ." *id.* 416 U.S. at 646, 94 S.Ct. at 1875. Similarly, in *Hayton v. Egeler,* 555 F.2d 599, 604–05 (6th Cir. 1977), this court found no constitutional infirmity in an argument where the prosecutor referred to the defendant as a "bungler" and expressed his personal belief in defendant's guilt.

Determining when prosecutorial error reaches egregious levels under *Donelly* is not easy. A framework for analysis is provided in *United States v. Leon,* 534 F.2d 667, 679 (6th Cir. 1976) where Judge McCree wrote:

"In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused."

Thus, in *Houston v. Estelle,* 569 F.2d 372 (5th Cir. 1978), the court granted habeas corpus relief where the prosecutor engaged in a deliberate campaign to characterize the defendant as a narcotics trafficker; repeatedly attacked the motive of defense counsel and the credibility of the defendant; and even insinuated that defendant had threatening "friends" in the audience. The defendant was accused of possession of a small quantity of heroin; the case at trial involved a difficult credibility determination between the defendant and the police.

Similarly, in *Miller v. North Carolina,* 583 F.2d 701 (4th Cir. 1978), the court granted habeas corpus relief in an interracial rape case where a key prosecutorial theme was that no white woman would ever consent to having sexual relations with a black. Although defendant's consent defense there "was not a strong one" *id.* at 707, the court found that blatant racial argument on such a sensitive issue was so prejudicial as to require automatic reversal.

In contrast, in *Cronnon v. Alabama,* 587 F.2d 246 (5th Cir. 1979), the court denied the writ in a case where, among other things the prosecutor made an argument "asking what kind of 'fiendish ghoul' could have committed such a crime, waving the gruesome pictures before the jury, and referring to the 'stark terror on the little girl's face' and the assailant's desire to hear the 'squish of her blood' " *id.* at 251. However, the crime committed was particularly gruesome and proof of guilt was overwhelming. In addition, no objection was made at trial. See *id.* at 251–52 (Rubin, J., concurring).

The above cases illustrate the extreme nature of prosecutorial misconduct required for a federal court to issue the writ. They also illustrate how each case turns on its own unique facts and how only a full review will reveal whether a constitutional violation took place.

### III.

The prosecutor's misconduct in this case is severe. The most objectionable part of his closing argument was the persistent *ad hominem* attack on the petitioner's character. This attack pervades the closing argument. The prosecutor continually portrayed petitioner as a lowlife who had to be kept from society. In a moment of eloquence rivaled only by a fire and brimstone orator, the prosecutor exclaimed that the petitioner was worse than all of the "criminals" and "traitors" in hell. A central theme of the prosecutor's argument was that the petitioner, who had been previously convicted of forgery and grand larceny, was trying to "forge" and "steal" justice by "conning" the jury with a made-up story. Taken as a whole, this closing argument was clearly improper. The question remains whether it deprived the petitioner of his right to a fair trial.

We conclude that it did not. First, at least some of the improper arguments were made in response to arguments by defense counsel. Defense counsel suggested that since his client had pleaded guilty to

other crimes in the past, that he would have done so in this case were he in fact guilty. In addition, defense counsel suggested that the police had not checked out his client's story and that "all they do is concentrate on making the story of the prosecuting witness credible." This does not excuse prosecutorial misconduct, *see Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); ABA Standards Relating to the Prosecution Function § 5.1 *et seq.,* but it diminishes the allegations made concerning a due process violation.

Second, no objection was made at trial to *any* of the argument. Although failure to object does not bar relief, it, too, is a significant consideration. Petitioner in his reply brief suggests that his trial counsel simply blundered in not objecting. Yet no inadequate assistance of counsel claim has been made and petitioner's trial attorneys appeared to be otherwise competent. We can only wonder whether trial counsel erred or whether they deliberately failed to object to prevent correction of the error and have an issue on which to appeal in an otherwise error-free trial where proof of guilt was compelling.[6]

Finally, and crucially, proof of guilt was overwhelming. The medical testimony showed that the victim had been brutally raped and sodomized. The bruises and laceration on her body belie consensual sexual activity, as did the torn clothing found at the place where the victim said she was raped. Petitioner's testimony that he had gone out with the victim previously and that they were lovers was not corroborated and is irreconcilable with the trailer park manager's testimony that he protected a terrified woman from the petitioner and that the petitioner referred to her as "the girl." Although the petitioner claims that this case was simply a credibility contest between him and the prosecutrix, proof of guilt was overwhelming. The petitioner was effectively caught red handed; the jury's verdict could not have been otherwise absent outright nullification.

We do not condone the prosecutor's argument. It was inexcusable. Moreover, given the strong proof of guilt it was unnecessary. Were proof of guilt less strong, we would not hesitate to issue the writ. On this record, we must decline to do so.

The judgment of the district court is affirmed.[7]

**6.** As we have previously noted, the only issue raised before the Kentucky Supreme Court or this court was the prosecutor's closing argument.

**7.** We commend petitioner's attorney for his excellent brief and oral argument.