43 F.3d 1471
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jerry DUNN, Petitioner-Appellant,
v.
Stephen SMITH, Warden Luther Luckett Correctional Complex
and Chris Gorman, Attorney General Commonwealth of
Kentucky, Respondents-Appellees.
 No. 94-5091.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1994.
 
 Before: MILBURN and SUHRHEINRICH, Circuit Judges; and JOINER,* District Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Petitioner Jerry Dunn, a Kentucky prisoner, appeals the district court's judgment denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. Sec. 2254. On appeal, the issues are (1) whether the district court erred in finding that petitioner was not denied the effective assistance of counsel under the Sixth and Fourteenth Amendments, due to the numerous errors of his trial counsel; and (2) whether the district court erred in finding that the allegedly inflammatory remarks made by the prosecutor during his closing argument did not deprive petitioner of his right to due process of law under the Fifth and Fourteenth Amendments. For the reasons that follow, we affirm.
 
 I.
 
 2
 On November 25, 1987, the Perry County (Kentucky) Grand Jury indicted petitioner on two counts of first degree sodomy, involving his nine-year-old son, A,[1] in violation of K.R.S. Sec. 510.070; and one count of first degree sexual abuse, involving his two-year-old daughter, B, in violation of K.R.S. Sec. 510.110. Petitioner, who was represented by appointed counsel, was arraigned on November 25, 1987. He entered pleas of not guilty to all of the charges.
 
 
 3
 A jury trial was held on November 28 and November 29, 1988. Petitioner's son, A,[2] was permitted to testify at trial following a hearing at which the state trial court judge determined that A was competent to testify. In addition, over strenuous objections by the defense, A's stepmother, Reace Dunn, was permitted to sit next to him while he was on the witness stand. A testified that he was in the fourth grade and that his favorite subject was math. A also testified that he had a little sister, B, and a younger brother, C; and that at one time, Nora Johnson had been his foster parent.
 
 
 4
 A further testified that his father had hit him in the face and that he was scared of his father. A testified that his father had done things to him which he did not like; namely, on one occasion he had been made to suck his father's penis and on another occasion his father had stuck his penis in A's "butt." J.A. 156-57. A testified that these events occurred in Bulan, Kentucky and Hazard, Kentucky; however, A also mentioned Manchester, Kentucky as a location for the events.[3]
 
 
 5
 Nora Johnson also testified at trial. She testified that in the latter part of July 1987, she became a foster parent for A, B, and C. She testified that when A first came to her his rectum was reddish. She testified that she had to have A sit in warm water three times a day for a week and use ointment for his condition. Ms. Johnson testified that she asked A how his condition had happened and he told her, "My dad did this to me." J.A. 174. Ms. Johnson also testified that she did not remember if A had told her where or when his father had hurt him. J.A. 174, 176-77.
 
 
 6
 Lois Jean Valentine testified at trial. Ms. Valentine testified that she was employed as a therapist for children who had been the victims of crime. She stated that she counseled A, B, and C during June and part of July of 1987, and she had also counseled B during March 1987.
 
 
 7
 Ms. Valentine testified that B was not capable of giving a verbal account of what had happened to her. Ms. Valentine testified that B, who was two years old, was allowed to play with anatomically correct male and female dolls as part of her therapy. In one session, B straddled and began "humping" one of the male dolls for approximately 40 seconds. J.A. 202. In another session, B put the sexual parts of one of the male and one of the female dolls together. J.A. 202-03. Ms. Valentine testified that B's actions convinced her that B had either been sexually assaulted or that she had witnessed people having sexual intercourse. J.A. 203.
 
 
 8
 Ms. Valentine further testified that during her therapy sessions with A, he told her that his father had "tried to put himself in [A's] back [end]" and had hurt A "real bad." J.A. 186. Ms. Valentine testified that A told her that this incident occurred at the home of A's grandmother in Bulan, Kentucky. J.A. 186.
 
 
 9
 At the conclusion of its deliberations, the jury found petitioner guilty of two counts of first degree sodomy, the two charges involving his son, and acquitted petitioner of the charge of first degree sexual abuse. Subsequently, the jury recommended that petitioner be sentenced to 25 years' imprisonment on each count, with the sentences to run concurrently.
 
 
 10
 On January 20, 1989, the state trial court judge sentenced petitioner in accordance with the jury's recommendation. The Supreme Court of Kentucky affirmed petitioner's convictions on direct appeal on November 30, 1989.
 
 
 11
 Thereafter, on November 12, 1990, petitioner sought collateral post-conviction relief by filing a motion to vacate judgment under Kentucky Rules of Criminal Procedure ("Ky.R.Crim.P. 11.42") in the Perry Circuit Court. The Perry Circuit Court overruled the motion to vacate judgment on December 20, 1991. The Court of Appeals of Kentucky affirmed the decision of the Perry Circuit Court on July 10, 1992.
 
 
 12
 Petitioner then filed a petition for a writ of habeas corpus, under 28 U.S.C. Sec. 2254, in the district court on December 11, 1992, asserting three grounds for relief. After appellees filed a response to the habeas petition and a motion to dismiss or, in the alternative, for summary judgment on February 24, 1993, the matter was referred to a magistrate judge.
 
 
 13
 On September 24, 1993, the magistrate judge issued her report and recommendation, recommending, after an exhaustive review, that the petition for a writ of habeas corpus be denied. After de novo review of the magistrate judge's report and recommendation in light of objections by both parties, the district court adopted the report and recommendation and dismissed the habeas petition on December 22, 1993. This timely appeal followed.
 
 II.
 A.
 
 14
 Petitioner argues that he was denied the effective assistance of trial counsel, as guaranteed by the Sixth and Fourteenth Amendments, by the errors of his counsel at trial. Specifically, on appeal, petitioner has identified five errors of his trial counsel,[4] which he asserts denied him the effective assistance of counsel: (1) trial counsel failed to properly prepare for and conduct the hearing to determine the competency of one of the child witnesses, A; (2) trial counsel failed to object to the fact that A's stepmother coached A during his direct testimony; (3) trial counsel failed to object to the prosecution's improper reliance on the doctrine of Jett v. Commonwealth, 436 S.W.2d 788 (Ky.Ct.App.1969), as a means of introducing hearsay statements made by A into evidence; (4) trial counsel failed to move for a mistrial following a revelation that a juror had been improperly contacted by a prosecution witness; and (5) trial counsel failed to move for a directed verdict of acquittal, based upon the sufficiency of the evidence, at the close of the prosecution's case.
 
 
 15
 To establish ineffective assistance of counsel, a habeas petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. Strickland v. Washington, 466 U.S. 668, 687 (1984). A reviewing court's scrutiny of counsel's performance is highly deferential. Id. at 689. As the Supreme Court has stated:
 
 
 16
 Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
 
 
 17
 Id. Furthermore, the reasonableness of counsel's performance must be judged based upon the circumstances at the time of the alleged errors, and not on the basis of hindsight. Id. at 690. "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won. United States v. Morrow, 977 F.2d 222, 229 (6th Cir.1992) (en banc), cert. denied, 1132 S.Ct. 2969 (1993). Thus, "the threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory." Id.
 
 
 18
 Based upon a review of the record, it is apparent that petitioner was not deprived of the effective assistance of counsel. First, a number of the alleged errors on the part of counsel are not "deficient" performance. Second, even in those instances where it is arguable that counsel was deficient, petitioner was not prejudiced by the alleged deficiencies.
 
 
 19
 Petitioner first asserts that his trial counsel was ineffective because she failed to properly prepare for and conduct a hearing to determine the competency of A, a child witness. Petitioner asserts that even though his counsel moved for and received a competency hearing on the basis of A's age and psychiatric condition, she failed to present any evidence concerning A's psychiatric condition at the competency hearing. Petitioner asserts that had counsel sought the presence of a child psychologist, Dr. Cowan, at the competency hearing, counsel would have been able to demonstrate that A's psychiatric condition and documented problem with lying rendered him incompetent to testify.
 
 
 20
 In this case, the state trial court judge held a competency hearing in chambers during which he interviewed A and satisfied himself that A was competent to testify. Although petitioner makes the conclusory allegation that had Dr. Cowan appeared at the competency hearing, his counsel could have shown that A was incompetent to testify, petitioner has not identified any evidence that would lead to the conclusion that the trial judge would have reached a different conclusion had Dr. Cowan appeared at the competency hearing. Further, even if petitioner had established that A had a "problem with lying," it is not readily apparent that such evidence would have prevented A from testifying, because such evidence addresses the issue of A's credibility as opposed to his competency to testify. Therefore, even if we were to assume that petitioner's counsel was deficient in failing to subpoena Dr. Cowan to appear at the competency hearing, petitioner has failed to establish that he was prejudiced by counsel's deficient performance, because he has not shown that the state trial court judge would have found A incompetent after hearing Dr. Cowan's testimony.
 
 
 21
 Second, petitioner asserts that trial counsel was ineffective for failing to object or note for the record that A's stepmother coached him during his testimony on direct examination by the prosecutor. The record reveals that petitioner's counsel strongly objected to the presence of A's stepmother in the courtroom during A's testimony. Defense counsel even told the court that "she [A's stepmother] is manipulating that child." J.A. 147. The trial court overruled the objection, stating
 
 
 22
 [t]his little boy is under tremendous pressure, and it's really difficult for him to get up here and testify in a case like this and have to look over at his father who is sitting over there and who's been accused of these things. I don't know how much more difficult a situation the child could be placed in than that.
 
 
 23
 J.A. 148. The record further shows that A's stepmother was permitted to sit next to him on the witness stand. J.A. 150. Therefore, if any coaching by A's stepmother occurred, it would have been witnessed by the jury. Thus, it was within the realm of professional judgment for defense counsel not to further raise the issue while A, a child, was on the witness stand, apparently in tears, testifying against his own father. Defense counsel reasonably could have made the tactical choice not to push the issue at that time lest she enrage the jury and prejudice the jurors against her client. Furthermore, defense counsel also made note of the coaching in her closing argument, when she stated:
 
 
 24
 We couldn't even get [A's] testimony without [his stepmother] having to come into the courtroom and nod her head. She got to sit over here and say ... She even got in the courtroom when we'd had a rule against the witnesses.
 
 
 25
 J.A. 215. Therefore, counsel's performance was not deficient in this regard.
 
 
 26
 Third, petitioner asserts that his trial counsel failed to object to the prosecution's allegedly improper reliance on the doctrine of Jett v. Commonwealth, 436 S.W.2d 788 (Ky.Ct.App.1969), to introduce into evidence hearsay statements that A made to others. Petitioner is referring to the testimony of two prosecution witnesses, Nora Johnson and Lois Jean Valentine, concerning statements that A had made to them. The record shows, however, that petitioner's counsel vigorously objected to the testimony of Ms. Johnson and Ms. Valentine. J.A. 176-77, 184. When counsel objected to the testimony of Ms. Johnson, who was the first of the two witnesses to testify, her objection was overruled on the basis of the Jett doctrine. Specifically, the trial court overruled defense counsel's objections to Ms. Johnson's testimony stating:
 
 
 27
 It's not hearsay, because we've had [A] in here and he's testified. So, you know, we've had him here; he's testified and been subject to cross-examination.[5]
 
 
 28
 J.A. 177.
 
 
 29
 Subsequently, when Ms. Valentine testified, defense counsel objected to her testimony, and the prosecutor stated that he was offering Ms. Valentine's testimony as to what A told her under the Jett doctrine. Defense counsel stated, "Your honor, [A] is his witness, and I wouldn't think that [the Jett doctrine] would apply. J.A. 184. The prosecutor then replied, "Well, of course it does. I mean, do you want to recess and look in the evidence book?" Id. Defense counsel declined to ask for a recess. Petitioner asserts that "[t]rial counsel, who did not insist on reviewing the evidentiary rules when offered the opportunity by the prosecutor, was deficient...." Appellant's brief at 13. Petitioner also asserts that defense counsel "lack[ed] the courage of her convictions" when she declined the prosecutor's offer to look in the evidence book. Appellant's brief at 12.
 
 
 30
 In this case, defense counsel's failure to insist upon a recess was not deficient performance. When counsel objected to the admission of Ms. Johnson's testimony, her objection was overruled. Having once been overruled on a similar objection, it is difficult to see how counsel's insistence on a recess so that she could engage in off-the-record bickering with the prosecutor would have benefitted petitioner. Further, nothing in the record shows that defense counsel was unfamiliar with the holding in Jett. Thus, counsel's performance in this regard was not deficient.
 
 
 31
 Fourth, petitioner asserts that his counsel was ineffective in failing to move for a mistrial after a juror revealed that he had been contacted by a prosecution witness. On the second day of petitioner's trial, one of the jurors, Henry Johnson, revealed that he had received a telephone call from Nora Johnson the previous evening. At a hearing in chambers, Mr. Johnson testified that Ms. Johnson telephoned him and asked if the jury had "hung [petitioner] yet?" J.A. 208. Mr. Johnson told Ms. Johnson that the case had been continued and Ms. Johnson "called [petitioner] ... a pervert or something, and said we might as well hang him ..." J.A. 209. Mr. Johnson was then questioned by the court, and he assured the court that he was able to reach a fair and impartial verdict and that the telephone call from Ms. Johnson would have no effect on his decision. J.A. 209.
 
 
 32
 Petitioner asserts that the failure of his counsel to move for a mistrial was ineffective assistance. Under the circumstances of this case, once the trial judge had determined that Juror Johnson was not tainted by the contact with Witness Johnson, it would have been futile for defense counsel to have moved for a mistrial. Furthermore, on direct review, Justice Leibson of the Supreme Court of Kentucky stated (in dissent), "Once the judge decided that the effect [of the contact between Juror Johnson and Witness Johnson] was harmless, moving for a mistrial was not only unnecessary, it would have been contemptuous conduct." J.A. 94. Clearly, trial counsel need not perform needless or contemptuous acts to render effective assistance to a client.
 
 
 33
 Finally, petitioner asserts that his trial counsel was ineffective for failing to move for a directed verdict on the grounds of insufficient evidence at the close of the prosecution's case. At the close of the prosecution's case, defense counsel moved for a directed verdict on the ground that the prosecutor had produced insufficient evidence to establish that the alleged offenses occurred in Perry County, Kentucky. Petitioner asserts that "there was insufficient evidence of two instances of sexual misconduct which occurred in Perry County, Kentucky." Appellant's brief at 16. Petitioner also asserts that under the Jett doctrine the testimony of Nora Johnson cannot be used as substantive evidence that the offenses occurred in Perry County, Kentucky. Id.
 
 
 34
 However, in this case, A testified that the offenses occurred in Bulan, Kentucky and Hazard, Kentucky, which are in Perry County, Kentucky. J.A. 155, 163. Furthermore, Nora Johnson testified that she could not remember if A ever told her where the offenses occurred. Thus, the jury could not possibly have relied on the testimony of Nora Johnson as substantive evidence that the offenses occurred in Perry County. Moreover, as the Court of Appeals of Kentucky stated in denying petitioner's motion to vacate judgment under Ky.R.Crim.P. 11.42, "[c]onsidering the evidence against [petitioner], ... a motion [for a directed verdict based on insufficiency of evidence] would have been futile." J.A. 101. Based upon the record, particularly A's testimony, we agree. We conclude that petitioner's counsel was not deficient in her performance when she did not move for a directed verdict based upon the sufficiency of the evidence. Therefore, the district court did not err in denying habeas relief to the petitioner based upon his claim of ineffective assistance of counsel.
 
 B.
 
 35
 Petitioner argues that certain statements made by the prosecutor in his closing arguments amounted to prosecutorial misconduct which was so egregious and inflammatory as to have violated his constitutional right to due process. Specifically, petitioner asserts that the following comments by the prosecutor were improper and inflammatory: (1) "Ladies and gentlemen, this verdict, it does involve a lot of [petitioner's]--a lot of time in his life, as it should, but the verdict is important for these children as well, it's important for this county. You stop and think of this: An erroneous acquittal, an erroneous acquittal based on a muddy-water defense, would have a devastating effect." J.A. 228; (2) "And poor little [A], what's he try to do, run out in front of a car to kill himself to get out of this abuse and all this environment." J.A. 233; (3) "People like Jerry Dunn are a plague on society." J.A. 238; (4) "We don't need 'em [child abusers]. And as far as I am concerned, they can lock 'em up and never let 'em out." J.A. 238; (5) "Our children would be better off for it [if child abusers were locked up], because you know as well as I do, that a child who's suffered this, whether it be [C], [B], or [A], carries psychological scars for the rest of their lives." J.A. 238; (6) "Think what a person like Jerry Dunn does to a young child. He sentences them to a life of hell for the rest of their lives." J.A. 238; (7) "Folks, don't give this man [petitioner] a Good Housekeeping Seal of Approval for what he's done." J.A. 238; (8) "You ought to stand for the right thing." J.A. 238; (9) "Don't turn your backs on these children." J.A. 238; (10) "[Y]ou talk about a sorry, no-good-for-nothing thing [referring to the victims' natural mother] she gets down there [in Tennessee] and her boyfriend puts this little [C] in scalding water." J.A. 233; (11) "You can't let people like that [petitioner] run up and down the roads in Perry County." J.A. 229; (12) "What about little [A]? Of course, I'll grant Ms. Catron [defense counsel] credit, she can confuse a nine-year-old child. That doesn't take much to do that." J.A. 230; and (13) "You know, man, this is really--this really eats me up [referring to B, who began hunching on an anatomically correct male doll during her therapy sessions]." J.A. 236.
 
 
 36
 Although some of the prosecutor's comments were inappropriate, the statements of the prosecutor were not so egregious as to render the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Cook v. Bordenkircher, 602 F.2d 117, 119 (6th Cir., cert. denied, 444 U.S. 936 (1979). "[A] prosecutor's comments must be viewed in context, and ... '[i]nappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.' " United States v. Bond, 22 F.3d 662, 667 (6th Cir.1994) (quoting United States v. Young, 470 U.S. 1, 11-12 (1985)). See also Hayton v. Egeler, 555 F.2d 599, 604 (6th Cir.) (The determination as to whether the prosecutor's statements rendered the trial fundamentally unfair is made by evaluating the totality of the circumstances surrounding each individual case.), cert. denied, 434 U.S. 973 (1977). Furthermore, "[p]roper context includes defense counsel's conduct as well as the nature of the prosecutor's response, i.e. the 'invited response' " Bond, 22 F.3d at 667 (quoting Young, 470 U.S. at 11). Where some of the improper arguments of the prosecutor are made in response to the arguments of defense counsel, the prosecutorial conduct is not excused, but the allegations of a due process violation are diminished. Cook, 602 F.2d at 120-21. This court "has identified the factors we are to consider in weighing the extent of prosecutorial misconduct in habeas cases." Angel v. Overberg, 682 F.2d 605, 608 (6th Cir.1982) (en banc).
 
 
 37
 In every case, we consider the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.
 
 
 38
 Id. (quoting United States v. Leon, 534 F.2d 667, 679 (6th Cir.1976)).[6]
 
 
 39
 At the outset, respondent raises two challenges to review of this issue. Respondent first asserts that although petitioner has identified thirteen different statements made by the prosecutor in the guilt phase of the closing argument, only the third and tenth statements identified above were raised on direct appeal to the Supreme Court of Kentucky. Respondent asserts that the other eleven statements of the prosecutor identified by petitioner were never raised as error in the Kentucky courts either at the trial level or on direct appeal. Respondent's brief at 23. In her report and recommendation, the magistrate judge stated:
 
 
 40
 Respondent argues that none of the thirteen challenged comments were contemporaneously objected to at trial and eleven of these comments were not presented on appeal in the state court and thus are procedurally barred from review in this Court. This argument has some merit, however, ... the undersigned will not disregard the previously unpresented comments.
 
 
 41
 J.A. 62-63. The magistrate judge further stated:
 
 
 42
 in reviewing allegations of improper prosecutorial comments, the reviewing court is obligated to assess the comments within the context of the entire trial. United States v. Young, 470 U.S. 1, 11-14, 16 (1985). It would, therefore, be impossible for the undersigned to review the closing argument of the prosecutor in context without taking into account the eleven comments alleged to be improperly before this Court and, as such, the undersigned will not attempt such acrobatics.
 
 
 43
 J.A. 63-64.
 
 
 44
 Consequently, respondent argues that the eleven statements of the prosecutor which were not presented to the Kentucky courts were not properly before the district court, and the district court erred in considering them. In Butler v. Rose, 686 F.2d 1163, 1169 (6th Cir.1982), this court stated that "portions of the closing argument which were neither objected to at trial nor considered by a state court on appeal are not a proper basis for a habeas corpus ruling by the district court or this court." Thus, although the statements of the prosecutor that were not presented to the Kentucky courts are part of the context in which the allegedly improper comments of the prosecutor must be assessed, they are not a basis for habeas corpus relief.
 
 
 45
 Respondent next argues that the remaining statements of the prosecutor, which were actually presented to the Kentucky courts, are also not a basis for habeas corpus relief, because the petitioner has failed to show "cause" and "prejudice" for his procedural default in failing to object to the statements of the prosecutor at trial.
 
 
 46
 In this case, no contemporaneous objection was made to the closing argument of the prosecutor at petitioner's trial. Under Kentucky law, a timely objection is necessary to preserve an issue for appellate review. See Ky.R.Crim.P. 9.22. However, "it is clear that under Kentucky law, failure to object at trial does not bar appellate review where 'the court is satisfied that the substantial rights of the defendant have been prejudiced.' " Cook, 602 F.2d at 119 (quoting Ky.R.Crim.P. 9.26). On petitioner's direct appeal, the Supreme Court of Kentucky commented that no contemporaneous objection to the prosecutor's closing argument was ever made. However, the court went on to state that upon review of the record, no reversible error had occurred. Specifically, the Supreme Court of Kentucky stated:
 
 
 47
 Appellant has raised five unpreserved allegations of error. Even though we might consider these as being abandoned, we have reviewed the record and find no reversible error.
 
 
 48
 J.A. 91. Petitioner also raised this issue in his motion to vacate judgment under Ky.R.Crim.P. 11.42. In affirming the denial of petitioner's motion to vacate judgment, the Kentucky Court of Appeals stated:
 
 
 49
 Dunn also argues that he was denied due process of law by improper and "overly inflammatory" remarks of the prosecutor in his closing argument. Again, this issue was raised in the direct appeal. Though unpreserved, the Supreme Court reviewed the record and found no error.
 
 
 50
 J.A. 98.
 
 
 51
 In Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977), the Supreme Court "held that a federal habeas petitioner who has failed to comply with a State's contemporaneous-objection rule at trial must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted" claim. Murray v. Carrier, 477 U.S. 478, 485 (1986); McBee v. Grant, 763 F.2d 811, 813 (6th Cir.1985). However, if the last state court to be presented with a particular federal claim does not rely on the procedural bar, but reaches the merits of the federal claim, any bar to federal court review of the merits of a habeas petition is removed. See Harris v. Reed, 489 U.S. 255, 262 (1989). More particularly, "[a]fter Harris, federal courts on habeas corpus review of state prisoner claims, like this Court on direct review of state court judgments, will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.' " Coleman v. Thompson, 111 S.Ct. 2546, 2557 (1991) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). "[T]he Harris presumption is to be applied only after it has been determined that 'the relevant state court decision ... fairly appear[s] to rest primarily on federal law or [is] interwoven with federal law.' " Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (quoting Coleman, 111 S.Ct. at 2559.
 
 
 52
 In this case, the Supreme Court of Kentucky did not rely on the procedural bar, but did reach the merits of petitioner's claim of prosecutorial misconduct. However, the statement of the Supreme Court of Kentucky that "we have reviewed the record and find no reversible error," J.A. 91, does not show that its decision either rested primarily on federal law or was interwoven with federal law. Thus, the Harris presumption does not apply to this case, and petitioner must show cause for his procedural default and prejudice attributable thereto in order to obtain habeas review of his claim of prosecutorial misconduct.
 
 
 53
 Petitioner has shown neither cause nor prejudice in this case. However, petitioner's failure to show cause and prejudice is partly attributable to the district court's erroneous conclusion that the decision of the Supreme Court of Kentucky to review petitioner's claim of prosecutorial misconduct removed the bar to federal habeas review of that claim.
 
 
 54
 Nonetheless, we conclude that even if petitioner were able to show cause for his procedural default and prejudice arising therefrom, he would not be able to obtain habeas relief arising from his meritless assertions of prosecutorial misconduct. In this case, even were we to consider all thirteen of the prosecutor's statements identified by petitioner, the statements taken as a whole were not so egregious as to render petitioner's trial fundamentally unfair.
 
 
 55
 In this case, the prosecutor made a personal attack on petitioner's character, and the prosecutor also made one reference to the actions of defense counsel. Such comments were inappropriate and improper. However, the majority of the comments were made in the final portion of the prosecutor's closing argument. Thus, they did not pervade the entire closing argument, much less the entire trial.
 
 
 56
 Moreover, at least part of the prosecutor's argument was made in response to comments of defense counsel. During her argument, defense counsel referred to the victim's stepmother as:
 
 
 57
 a virus.... I could ask her if it was day, she'd say night. If I'd ask was it yesterday, she'd say it was two years ago ... the woman didn't know whether she was coming or going.... She didn't know what was done to her. If I'd been raped, I'd know what had happened to me, when it happened to, and where I was at [sic]. If my daughter had been raped, I'd know where I was at [sic], when it occurred, and what day it was.... Now if I was afraid of somebody, I'd know why I was afraid of him.
 
 
 58
 J.A. 215-16. The fact that the prosecutor was responding to the arguments of defense counsel does not excuse any prosecutorial misconduct, but it diminishes any allegations concerning a due process violation. Cook, 602 F.2d at 121.
 
 
 59
 Furthermore, a review of the evidence of the trial shows that there was strong evidence of petitioner's guilt, evidence which when viewed in the light most favorable to the prosecution leads to the conclusion that a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). In this case, petitioner's nine year old son, A, took the witness stand and testified that on one occasion he was forced to suck his father's penis and that on the following day, his father stuck his penis in his anus.
 
 
 60
 Moreover, a review of the record clearly establishes that the prosecutor's argument did not overwhelm or inflame the jury. First, although the jury convicted petitioner of two of the three charges against him, petitioner was acquitted of one of the charges. Second, at sentencing, the jury recommended a sentence far less than the maximum that they could have imposed. Because petitioner's victim was less than 12 years of age, his convictions of first degree sodomy were Class A felonies under Kentucky law. See K.R.S. Sec. 510.070. As a Class A felony, the terms of imprisonment for each count of conviction were "not less than twenty (20) years nor more than life imprisonment." K.R.S. Sec. 532.060(a)(2)(a). Thus, the jury's recommendation of 25 year concurrent sentences was far below what it could have recommended. Therefore, the record reflects that at both the guilt and sentencing phases of its deliberations, the jury deliberated based on reason rather than passion or emotion stemming from the prosecutor's comments
 
 
 61
 Consequently, despite some inappropriate comments by the prosecutor during closing argument at the guilt phase of petitioner's trial, the prosecutor's statements were neither so egregious nor pervasive as to deprive petitioner of a fundamentally fair trial. Therefore, we conclude that the district court did not err in denying habeas relief to the petitioner based upon his claim of prosecutorial misconduct.[7]
 
 III.
 
 62
 For the reasons stated, the district court's judgment denying habeas relief to petitioner is AFFIRMED.
 
 
 
 *
 Honorable Charles W. Joiner, District Judge, Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Office of the Kentucky Attorney General has adopted a policy of not using the names of child abuse victims in briefs concerning child abuse cases. In deference to this policy, we will not refer to the child victims in this case by name
 
 
 [2]
 A was ten years of age at the time of trial; he was apparently nine years of age at the time of the events in question
 
 
 [3]
 Bulan and Hazard are located in Perry County, Kentucky; Manchester is located in Clay County, Kentucky
 
 
 [4]
 In his habeas petition, petitioner identified six errors of trial counsel which he asserted deprived him of the effective assistance of counsel. The sixth error, namely, that counsel failed to object to the admission of irrelevant and prejudicial evidence that petitioner fondled A's brother and masturbated in front of his children, has been abandoned on appeal. See Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992)
 
 
 [5]
 The Jett doctrine states, "When both the person who is said to have made the out-of-court statement and the person who says he made it appear as witnesses under oath and subject to cross-examination there is simply no justification for not permitting the jury to hear, as substantive evidence, all they both have to say on the subject and to determine wherein lies the truth." Jett v. Commonwealth, 436 S.W.2d 788, 7921 (Ky.Ct.App.1969)
 
 
 [6]
 Recently, in United States v. Carroll, 26 F.3d 1380 (6th Cir.1994), this court addressed the standard of review to be used in reviewing claims of prosecutorial misconduct on direct appeal. Specifically, we stated that we would apply the standard introduced in United States v. Bess, 593 F.2d 749, 753-57 (6th Cir.1979) "in all subsequent cases involving non-flagrant improper prosecutorial remarks." Carrol, 26 F.3d at 1387. Under the Bess standard a reviewing court considering improper prosecutorial remarks that are not flagrant on direct appeal "is to remand for a new trial if: (1) proof of defendant's guilt is not overwhelming, and (2) defense counsel objected, and (3) the trial court failed to cure the error with an admonishment to the jury." Id. at 1385-86 (citing Bess, 593 F.2d at 757)
 
 
 [7]
 Furthermore, we are of the opinion that none of the claimed errors in this case is of such magnitude as to require reversal of petitioner's convictions even when considered cumulatively. See Payne v. Janasz, 711 F.2d 1305, 1315 (6th Cir.), cert. denied, 464 U.S. 1019 (1983)